J-A05008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.A.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.J.B., | : | |
| | : | |
| Appellant | : | No. 3293 EDA 2017 |

Appeal from the Order Entered September 20, 2017
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C0048CV2016-11301

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 29, 2018**

Appellant, B.J.B. ("Father"), appeals from the September 20, 2017 Order, which granted the Petition for Custody filed by Appellee, M.A.C. ("Mother"), and awarded Mother primary physical custody of V.L.B. ("Child").[1,2]   Upon careful review, we affirm.

---

[1] Although the Order is dated and time-stamped September 19, 2017, the Prothonotary gave notice of the order to the parties on September 20, 2017. Accordingly, we will refer to it as the September 20, 2017 Order. ***See Fischer v. UPMC*** 34 A.3d 115, 121 (Pa. Super. 2011) (stating that "[a] civil order is not considered to be entered on the docket until the prothonotary makes a notation on the docket of compliance with the notice requirement of Pa.R.C.P. 236(b).").

[2] In its 9/20/17 Order the trial court incorrectly identified Father as "B.S.B." The Notice of Appeal and subsequent filings identify Father as "B.J.B."  We have changed the caption accordingly.

---

\*   Former Justice specially assigned to the Superior Court.

**FACTUAL AND PROCEDURAL HISTORY**

The relevant factual and procedural history is as follows. Mother and Father are parents to 5-year-old Child. Mother and Father were never married, but lived together until July 2016. Mother was a stay-at-home parent prior to the break-up, and was Child's primary caretaker. In June 2016, Mother entered a rehabilitation facility for alcohol abuse. Upon her release in July 2016, Father asked Mother to leave their home and Mother moved in with her parents. Father and Mother informally agreed to share physical custody of Child, who spent four nights with Mother and three nights with Father each week.

Mother relapsed in December 2016 and police subsequently arrested her for public drunkenness. On December 12, 2016, in response to Mother's behavior during her relapse, Father filed a Protection from Abuse ("PFA") Petition against Mother. The court granted a temporary PFA Order and awarded Father temporary physical custody of Child. Father later withdrew the PFA Petition.

On December 28, 2016, Father filed a Petition for Custody in Carbon County, Pennsylvania. On December 29, 2016, Mother filed the instant Petition for Custody in Northampton County to which Father filed Preliminary Objections contesting jurisdiction. On January 9, 2017, the Northampton court issued a temporary custody Order reverting to the previously agreed upon custody arrangement where Child spent four nights with Mother and

three nights with Father each week. The court also ordered both parties to submit to weekly urine screenings.

On February 2, 2017, the Northampton court denied Father's Preliminary Objections and scheduled a custody conference. On April 28, 2017, after a settlement conference where parties did not reach an agreement, the court issued a temporary Order granting primary physical custody to Mother, weekend visitation to Father, and shared custody during summer months. The Order required parents to attend co-parent counseling and submit to weekly random urine screens.

On September 13, 2017, the trial court held a custody hearing. The court heard testimony from Mother, Mother's mother, Mother's stepfather, Mother's fiancé, and Diana O'Brien, the president and CEO of Substance Abuse Screening Services. The trial court also heard testimony from Father, Father's mother, and Father's paramour.

Mother testified that she currently lives in her mother's home with her mother, her stepfather, her adult brother, and her grandmother. N.T. Trial, 9/13/17, at 85. Child has her own bedroom in the home and Mother sleeps in the finished basement. *Id.* at 105. Mother works at Waffle House approximately five to six days per week and the family with whom she resides helps to care for Child while Mother is at work. *Id.* at 115. Additionally, the family members engage Child in various recreational activities and take her on vacation. *Id.* at 60.

Mother testified that she has been taking Xanax for 10 years for severe anxiety disorder, and acknowledged a history of alcohol abuse. *Id.* at 89, 127. Since January 9, 2017, Mother has submitted 23 urine samples: 3 had abnormal creatinine levels[3] and 1 was positive for marijuana. *See id.* at 13-22; Appellant Exhibit 3; Trial Court Opinion, filed 9/19/17, at 6. When asked about the positive drug screen, Mother testified that she unknowingly and unwillingly ingested a "marijuana brownie" at a picnic. *Id.* at 104. Mother testified that, since she entered rehab in July 2016, she has maintained her sobriety with the exception of her December 2016 relapse and the July 2017 picnic incident. *Id.* at 104-105.

Mother's fiancé testified that Mother stays overnight with him approximately one or two nights a week; Child is occasionally present and sleeps in a separate bedroom. *Id.* at 77, 79. Mother and her fiancé have not set a wedding date, and have no immediate plans to move in together. *Id.* at 72, 80.

Mother and her fiancé both deny the presence of physical abuse in their relationship, but Mother recalled one instance when her fiancé accidentally burned her with a cigarette when he reached over her. *Id.* at 80-81, 85-86, 142-43. She admitted that she exaggerated the story to make her fiancé's

_____

[3] Elevated creatinine levels in blood serum or urine can indicate compromised kidney function, and may be caused by dehydration, a low blood volume, the consumption of a large amount of meat, or certain medications. https://www.mayoclinic.org/tests-procedures/creatinine-test/about/pac-20384646.

action seem intentional when she relayed the story to Father in order to get attention from Father. *Id.*

Father testified that he works as a youth care worker at a residential treatment center for adolescent males. *Id.* at 184. Father typically works weekends, but has two days off during the week. *Id*. at 203. Father relies on his mother and his paramour to aid in childcare when he is at work. *Id.* at 204.

Father owns his own home and lives by himself, although his paramour sleeps over approximately four nights a week. *Id.* at 156, 185. In Father's home, Child has her own bedroom and a "fairy garden" in the backyard. *Id.* at 187. Child has many similarly aged cousins that live close to Father and has numerous friends in Father's neighborhood. *Id.* at 188. Father attends Child's pediatrician and dentist appointments regularly. *Id.* at 200-01.

Father's paramour testified that she often picks up Child from Father's mother's home, transports Child to Father's home, and watches Child at night. *Id.* at 156. Father's paramour stated that she has no issues communicating with Mother regarding Child's well-being and evening schedule when providing childcare. *Id.* at 156, 158.

On September 20, 2017, the trial court granted Mother's Petition for Custody, awarding primary physical custody to Mother and visitation to Father two nights per week, with Mother and Father exchanging custody on a weekly basis during the summer.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

**ISSUES ON APPEAL**

Father raises the following issues on appeal:

A. Did the trial court err in failing to conclude that [Father] be awarded primary physical custody based upon the statutory factors enumerated in 23 Pa.C.S. § 5328(a)?

B. Did the trial court err by limiting testimony with respect to 23 Pa.C.S. § 5328(a)(2) respecting the "present and past abuse commited by a party or member of a party's household," and by failing to appropriately consider the evidence of record respecting this factor?

C. Did the trial court err in concluding from the evidence that [Father], [Father]'s paramour, and paternal grandmother would not foster a relationship between [Mother] and [Child]?

Father's Brief at 11 (some capitalization omitted).

**STANDARD AND SCOPE OF REVIEW**

When reviewing child custody matters, our paramount concern is the best interests of the child. ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006). "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." ***Id.*** (quotation and citation omitted).

This Court reviews a custody determination for an abuse of discretion. ***In re K.D.,*** 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different

conclusion." ***Id.*** (citation omitted).  Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." ***Id.*** (citation omitted).

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad:

> . . . we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record.  On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court.  Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.  Further, on the issues of credibility and weight of the evidence, we defer to the findings [of] the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

***Saintz, supra*** at 512 (quotation and citation omitted).

**THE CHILD CUSTODY ACT**

The Child Custody Act ("the Custody Act"), 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011.  ***E.D. v. M.P.,*** 33 A.3d 73, 77 (Pa. Super. 2011).  The Custody Act requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering

any form of custody." 23 Pa.C.S. § 5328(a).[4] A trial court must "delineate

the reasons for its decision when making an award of custody either on the

_____

[4] 23 Pa.C.S. § 5328(a) provides:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

record or in a written opinion." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 401 (Pa. Super. 2014); ***see also*** 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013).

As stated above, we review Father's arguments particularly recognizing that "we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are

---

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

unreasonable in light of the sustainable findings of the trial court." **Saintz, supra** at 512.

## Section 5328 Child Custody Factors

In his first issue, Father claims (1) that the trial court did not properly evaluate the best interests factors enumerated in 23 Pa.C.S. § 5328; and (2) there was not sufficient evidence presented to support an award of primary physical custody to Mother. Father's Brief at 29. In support, Father argues that the trial court placed too much weight on the Mother's role as primary caretaker while failing to consider adequately Mother's history of substance abuse, her unstable living arrangements, and her allegations of abuse leveled against her fiancé. **Id.** at 40. We disagree.

In its Opinion, filed simultaneously with its Custody Order, the trial court considered the custody factors enumerated in Section 5328, with the exception of Child's preference due to her age. The trial court found that a majority of the factors balanced equally between Mother and Father, acknowledged that both were excellent parents, and opined:

> This case has presented a difficult decision for the [c]ourt. By all accounts, all of [Child]'s physical and emotional needs are easily met in the households of each parent, and if the parties lived in greater proximity, an award of shared custody would likely be appropriate. Moreover, it was clear from the testimony of the parties and the report of their co-parenting counselor that they both have the best interest of their daughter at heart, they both provide her with loving and nurturing homes, and that each thinks the other is a good parent and wants the other parent to enjoy liberal time with [Child]. They have some difficulty communicating, but not greatly. Both parents clearly put [Child] before themselves, and she is the heart of their lives.

- 10 -

Trial Court Opinion, dated 9/19/17, at 8.

Nonetheless, the trial court found that several factors were in favor of awarding primary custody to Mother. The trial court found that Mother was more likely to foster a positive relationship between Father and Child, had the availability of extended family members within the household, and was able to provide consistent and stable childcare arrangements due to family support. *Id.* at 8-9. Finally, the trial court found that awarding primary custody to Mother, who has always been Child's primary caretaker, would serve the need for stability and continuity in Child's life. *Id.* Our review of the record supports the trial court's conclusions.

Father cites *W.C.F. v. M.G.*, 115 A.3d 323, 324 (Pa. Super. 2015), to support his argument that the trial court abused its discretion when it relied primarily on Mother's role as Child's primary caretaker in making its custody determination. In *W.C.F.*, this Court reversed an award of primary physical custody to the mother and held that "the fact that father has not been primary custodian to date is, first, a function of **mother's unilateral unreasonable decisions**, and second, not a basis for denying him primary custody where **all factors point otherwise**." *W.C.F., supra at* 330 (emphasis added).

*W.C.F.* is legally and factually distinguishable from the instant case. In the instant case, both parents are equally involved in Child's life and there was no evidence presented that Mother made "unilateral unreasonable decisions" to deny Father access to Child. Most notably, unlike in *W.C.F.*, not all remaining custody factors were in favor of Father. Rather, as discussed

- 11 -

above, the trial court found that several of the custody factors were in favor of Mother and those findings are supported by competent evidence in the record. Father's reliance on **W.C.F.** is, thus, misplaced.

Father also argues that the trial court failed to consider adequately Mother's history of substance abuse, Child's unstable living arrangements while living with Mother as evidenced by Child spending nights at Mother's fiancé's home, and Mother's allegation of physical abuse against her fiancé.[5] Our review of the record belies these claims.

The trial court found Mother's testimony regarding her efforts to maintain sobriety to be credible and opined:

> While [Father] may place greater weight on [Mother]'s past substance abuse and psychological history than did the [trial court], that does not negate the fact that we clearly considered those issues . . . it is clear that [Mother] has maintained her sobriety for many months, and that she is actively working to better herself to be the best possible mother to [Child]. Insofar as [Mother] is clearly now on the right path in her own life and has an excellent support system in her home – a support system that is also an important and consistent family network for [Child] – we put less weight on her past behavior than we placed on [Child]'s need for stability and consistency in what is clearly a healthy, stable, and loving home with [Mother].

---

[5] In addition, Father argues that the trial court failed to adequately consider Mother's "previously levied allegations of abuse against her [stepfather.]" Father's Brief at 38. Father fails to identify what allegations he is referring to and fails to develop this argument beyond one sentence in his Brief. Accordingly, this argument is waived and we decline to address it. **See Commonwealth v. Walter**, 966 A.2d 560, 566 (Pa. 2009) (holding claims waived for failure to develop them).

Trial Court Opinion, dated 10/23/17, at 2. Notably, the trial court found Mother's testimony credible that, during their relationship, "Father also consumed alcohol to excess and smoked marijuana." Trial Court Opinion, dated 9/9/17, at 7.

Moreover, despite Father's claim to the contrary, the trial court did consider the fact that Child occasionally spends the night at Mother's fiancé's home, and concluded that the two have a positive relationship. **See id.** at 3-4. Finally, the trial court also considered the allegation that Mother's fiancé intentionally burned Mother with a cigarette, and found Mother's testimony that the incident was an accident, and her admission that she exaggerated the story when relaying it to Father, to be credible. **See id.** at 7.

As stated above, we defer to the findings of the trial court on issues of credibility and weight of the evidence. **Saintz, supra** at 512. Our review of the record supports the trial court's findings, and, thus, we conclude that the trial court did not abuse its discretion when it analyzed the Section 5328 custody factors and determined that awarding primary physical custody of Child to Mother was in Child's best interest.

**Evidence of Present and Past Abuse**

In Father's second issue, he avers that the trial court erred in limiting testimony with respect to 23 Pa.C.S. § 5328(a)(2) regarding the "present and past abuse committed by a party or member of a party household" and by failing to appropriately consider the evidence regarding this factor. Father's Brief at 42; Father's 1925(b) Statement at 1.

Rule 1925(b) requires an appellant to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). This Court may find waiver where a Rule 1925(b) Statement is too vague. *In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Id*. (citation omitted). A 1925(b) Statement that is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no 1925(b) Statement at all. *Id.*

Here, the trial court was unable to address Father's issue, stating: "we find that we are unable to meaningful respond to this error, insofar as [Father] has not specified the testimony to which he refers." Trial Court Opinion, dated 10/23/17, at 2. Because this issue is overly vague, and the trial court was unable to address it, we conclude that Father has waived this issue on appeal.

**Trial Court's Credibility Determinations**

In Father's final issue, he avers that the trial court erred when it concluded that Father, Father's paramour, and Father's mother would not foster a relationship between Mother and Child. Father's Brief at 47.

Concerning issues of credibility, we must defer to the presiding trial judge who viewed and assessed the witnesses first hand. *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010). We will not disturb the trial court's conclusions unless they are "manifestly unreasonable as shown by the

evidence of record." ***Saintz, supra*** at 512. In light of our standard of review, we are unable to conclude that Father's final issue has merit.

The trial court noted that despite Father's acknowledgment during co-parent counseling that Mother was an "excellent parent," Father and his witnesses "were quick to demonize Mother for her past misbehavior during the parties' relationship." Trial Court Opinion, dated 9/9/17, at 8. The trial court further opined:

> Their concerns in this regard were not credible insofar as they had never before raised those concerns throughout the history of the case. The overall tenor of the testimony by Father, his paramour, and [Father's mother] made it clear to the [trial court] that they would not foster a positive relationship between Mother and Child.

***Id.***

The trial court also pointed to specific testimony from Father's paramour and opined: "[w]hile it is not necessarily apparent from the words spoken on the record, the tone of voice, mannerisms, and words of [Father]'s paramour during her testimony made it clear to this [c]ourt that she looks upon [Mother] with a great deal of disdain, which led to our conclusion about her influence on [Child]." Trial Court Opinion, dated 10/23/17, at 3. Likewise, the trial court concluded that Father's mother "harbors a great deal of negativity" towards Mother and once again opined that its conclusion was not only based on her testimony but also the trial court's observations of her demeanor on the witness stand. ***Id.*** at 4.

Our review of the record, giving deference to the trial court's in-court observations and credibility determinations, reveals that the trial court's conclusions are not manifestly unreasonable. As the record supports the trial court's conclusions, Father's final issue lacks merit.

In conclusion, a review of the record supports the trial court's findings and reveals that the court properly considered Child's best interests when it granted Mother's Petition for Custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/18