966 A.2d 560

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Shonda Dee WALTER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 2, 2008.

Decided March 20, 2009.

Stephen C. Smith, Esq., Lock Haven, for Shonda Walter.

Christopher D. Carusone, Esq., PA Office of Attorney General, Amy Zapp, Esq., for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

This is a direct capital appeal following Appellant's conviction for first-degree murder and the trial court's imposition of the death sentence.[1] We affirm.

On Sunday, March 31, 2003, Lock Haven police discovered the dead body of James Sementelli inside his home. Mr. Sementelli, an 83 year-old veteran, had suffered a brutal attack. He sustained over 60 wounds, 18 fractures, and 45 bruises to various parts of his body, many of them to his head, face, and neck. Mr. Sementelli's left ear was nearly severed from his head. His nasal bone and skull were fractured and his right eye punctured. He had numerous defensive wounds on his arms and hands and multiple gaping chop wounds all over his body. The killer used a hatchet.

Based on a number of factors, including the last time the victim was seen alive, as well as old newspapers found on his porch and another paper found near his body, police determined that Mr. Sementelli had been murdered on Tuesday, March 25, 2003. The investigation soon focused on Appellant Shonda Dee Walter, a young woman who lived with her mother in a house across the street from Mr. Sementelli.

A neighbor, Monica Rupert, told police that she saw Appellant pacing outside the Sementelli residence on the evening of the 25th, talking on a cordless telephone. Appellant's mother, Judith Walter, told police that her daughter had been out of the house on that evening, only to return later and leave again, taking the telephone with her. Mrs. Walter never saw her daughter again that night, but when she awoke the next morning she noticed that the phone had been returned and Appellant had left a note explaining that she was staying at her friend Michelle's house.

---

1. This Court has jurisdiction of a direct appeal in which the death penalty has been imposed. 42 Pa.C.S. § 9711(h)(1).

Shanee Gaines became the Commonwealth's primary witness against Appellant. Gaines, who lived in Williamsport, knew Appellant through Michelle Mathis, a young woman who was allegedly a member of the Bloods street gang and lived on the same street as Gaines. According to Gaines, she was at Mathis's home on the night of the murder, caring for Mathis's child. Mathis had been involved in an altercation on the street earlier that evening and had been taken to the hospital for treatment. While Mathis was at the hospital, Appellant appeared at Mathis's Williamsport residence. Appellant was driving Mr. Sementelli's white Toyota. Gaines granted Appellant entrance to Mathis's home and noticed that Appellant had blood on her forehead and was wearing rubber gloves that also had blood on them. Appellant promptly went upstairs to shower while Gaines waited downstairs. At some point Mathis returned. Ultimately, the three women left the house and traveled in Mr. Sementelli's car to his house in Lock Haven. While en route, Appellant told Gaines and Mathis that she had killed the victim and described how she struck him repeatedly with the hatchet while she ignored his pleas that she call for help.

When the trio arrived at Mr. Sementelli's house, Appellant used a key to enter and showed the other two women the victim's body. According to Gaines, the purpose of the visit was to dispose of a cigarette that Appellant had left at the scene and to remove the body from the house. Gaines refused to assist Appellant and Mathis and quickly returned to the car. Appellant and Mathis soon joined her, with Appellant carrying a large plastic tub of quarters. Before leaving, Appellant ran into her mother's house to leave a note and get a change of clothes. The women then drove to a grocery store and redeemed the coins, receiving a receipt for $510.25 from a coin machine.[2] The supermarket video camera recorded the women's visit. During the drive back to Williamsport, Appellant flung the hatchet from the car into a wooded area.

2. The women were unable to receive cash because of the late hour. Gaines and Mathis returned to the market the following morning and redeemed the receipt. The three women split the money.

Gaines's involvement with Appellant continued in the hours and days after the murder. That same night, the three women purchased some marijuana and then watched movies together at Gaines's house.[3] A few days later, Gaines accompanied Appellant and others, including her good friend Aaron Jones, on a trip to Philadelphia where Appellant attempted to sell Mr. Sementelli's car. Appellant told Jones and others that the car belonged to her father, who had died, and she wanted to sell it because she had "bad memories" about it. When the sale was unsuccessful, the group returned to Williamsport and Appellant permitted Jones to drive the vehicle. Police stopped Jones while he was driving the car and Gaines feared that Jones, who knew nothing about Mr. Sementelli's death, would be implicated in the crime. As a result, Gaines contacted police and told them everything she knew.

Police recovered the hatchet, which a Williamsport resident found on his property days after the murder and turned over to state police. Blood on the hatchet matched that of Mr. Sementelli. A friend of Appellant's told police that a similar hatchet had been stolen from his parents' house years earlier during a party that Appellant attended. The friend's father confirmed that the murder weapon was the one he had owned. Another Williamsport resident told police that she had seen Appellant wearing a hatchet on her belt in the weeks before the murder. Appellant's mother explained that when Appellant moved into her house with her young daughter in 2002, one of Appellant's possessions was a hatchet, which she placed in a kitchen drawer. When Appellant was arrested, Mrs. Walter searched for the hatchet with police, but it was no longer in the drawer.

Appellant was charged with the murder of Mr. Sementelli and felony theft of his automobile. The Commonwealth gave notice of its intent to seek the death penalty, based on a single aggravating circumstance: murder committed while in the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6). Appellant

3. Appellant had taken a trash bag full of movies from Mr. Sementelli's house and brought them to Gaines's residence.

was bound over for trial in May 2003. Following an unsuccessful attempt to dismiss the aggravating circumstance, Appellant was convicted of first-degree murder and felony theft on April 18, 2005. A penalty hearing followed, at which Appellant asserted three mitigating circumstances.[4] The jury found the single aggravating circumstance and no mitigating circumstances. It returned a sentence of death, which the trial court formally imposed on April 19, 2005. This automatic appeal followed.

■ Appellant raises four issues on appeal, none of which are completely clear in their rationale and some of which are unintelligible. Appellant makes no claims with respect to the guilt phase of her trial. At the conclusion of her brief, Appellant asks that this Court "consider vacating the death sentence imposed upon [her]." Appellant's Brief at 11. Before we address Appellant's issues, we begin with our mandatory, independent review of the sufficiency of the evidence to support the conviction for first-degree murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Our task is to determine "whether the evidence, and all the reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish that the jury could have reasonably determined that all the elements of the offenses were established beyond a reasonable doubt." *Commonwealth v. Walker*, 540 Pa. 80, 656 A.2d 90, 94 (1995). Murder in the first-degree is an intentional killing, one that is willful, deliberate, and premeditated. *Id.* at 95 (citing *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 498 (1988) and 18 Pa.C.S. § 2502).

4. Appellant identified the following mitigating circumstances: the age of the defendant, 42 Pa.C.S. § 9711(e)(4); the fact that the defendant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); and any other evidence of mitigation concerning the character and record of the defendant and the circumstances of the offense, 42 Pa.C.S. 9711(e)(8) (the "catchall mitigator").

398

■ The evidence in this case amply supported the jury's verdict. On the night of the murder, Appellant appeared at a friend's house in Williamsport driving the victim's car, with blood on her hands and forehead. She returned to the scene of the crime with witness Shanee Gaines, to whom Appellant described in detail the murder she committed that night. Multiple witnesses connected Appellant to the murder weapon, including her own mother. In addition to the evidence summarized above, the Commonwealth presented the testimony of two people Appellant confided in while in prison. Amanda Horner testified that Appellant admitted her guilt and described the manner in which she had committed the murder. Appellant explained to Horner that she had killed Mr. Sementelli because she wanted his car, which she intended to sell for money to pay off fines that she owed. Gaines and other witnesses testified that Appellant drove the Toyota to Philadelphia shortly after the murder in an effort to sell it. Both Horner and inmate/witness Coran Freeland testified that Appellant said she also killed the victim because she wanted to gain entry into the Bloods street gang.

The physical and testimonial evidence linking Appellant to Mr. Sementelli's killing, Appellant's own statements regarding her intentions, and the brutal manner in which the victim was murdered, all combine to establish that Appellant committed an intentional killing that was willful, deliberate, and premeditated.

■ Appellant's first claim of error on appeal concerns pretrial matters. She asserts that the trial court erred in "failing to dismiss the aggravating circumstance ... wherein the Commonwealth failed to demonstrate that ... [she] had the intent to commit a felony during or prior to the course of the murder." Appellant's Brief at 2. At the preliminary hearing in this matter, the Commonwealth offered the testimony of Shanee Gaines, who testified that on the night of the murder, Mathis told her that Appellant intended to kill a man for his car and would be coming to Mathis's home after the murder for help in hiding the body. Defense counsel objected to this testimony on the basis of hearsay. The Commonwealth

responded that Mathis's statement constituted an exception to the hearsay rule in that it was a statement of a coconspirator. Defense counsel argued that admission on this basis was unfair because he had no notice of an alleged conspiracy. The trial court informed counsel that he intended to permit the testimony at that juncture, but that counsel was welcome to request a continuance for additional time in which to cross-examine Gaines. Counsel did not seek a continuance, Gaines's testimony was admitted, and Appellant was bound over for a capital trial.

Several months after the preliminary hearing, counsel filed a motion to dismiss the aggravating circumstance and a petition for writ of habeas corpus with respect to the theft charge. At the hearing on the two motions, the transcript from the preliminary hearing was incorporated into the record. The Commonwealth maintained that the statements made by Mathis to Gaines (regarding Appellant's intention to kill the victim for his car) were admissible as statements of a coconspirator and, further, that those statements established Appellant killed the victim so that she could steal his car. Defense counsel did not object to the Commonwealth's use of this testimony to satisfy its burden nor did counsel make any argument addressing the admissibility of the evidence. Instead, counsel sought to present the testimony of another witness, Frank Flippen. When asked for an offer of proof, counsel asserted that Flippen would testify that it was Mathis who killed Mr. Sementelli. The trial court ruled that such evidence was irrelevant to the issue before it, *i.e.,* whether the Commonwealth had presented any evidence in support of the aggravating circumstance. Again, counsel made no argument on the evidence the Commonwealth presented or the admissibility of that evidence. The trial court ultimately denied the motion to dismiss the aggravating circumstance. Appellant now insists that this was error under *Commonwealth v. Buck,* 551 Pa. 184, 709 A.2d 892 (1998), and that such error should prompt this Court to vacate the sentence of death.

In *Buck,* this Court reviewed a trial court's order quashing the Commonwealth's notice of aggravating circumstances.

Defense counsel had filed a pre-trial motion to quash aggravating circumstances and the trial court held a hearing on the matter. *Id.* at 894. After assessing the Commonwealth's evidence by reviewing the discovery materials, the trial court concluded that the Commonwealth's evidence was insufficient to establish any of the aggravating factors alleged. As a result, the trial court dismissed the aggravating circumstances, nullifying the case's capital status, without prejudice to the Commonwealth's right to file an amended notice of aggravating circumstances. *Id.* This Court reversed the trial court's order and remanded the matter for capital proceedings. *Id.* at 897–98.

Observing that the law required the Commonwealth to file notice of alleged aggravating circumstances pursuant to Pa. R.Crim.P. 352, the *Buck* Court held that a capital defendant is entitled to challenge the Commonwealth's Rule 352 notice based on his assertion that there is no evidence supporting the proposed aggravating circumstances. *Id.* at 896. The Court explained that "a valid claim for purposeful abuse exists when the Commonwealth files an unwarranted notice of aggravating circumstances." *Id.* However, the court's inquiry in such a case is a limited one and is "focused solely upon whether the case is properly designated as capital, not whether each aggravating factor alleged is supported by evidence." *Id.* Because the trial court is required to instruct a capital jury to consider aggravating circumstances for which there is "*some evidence,*" the *Buck* Court held that the trial court was prohibited from engaging in "pre-trial factfinding or *weighing* of evidence of a proposed aggravating factor." *Id.* at 896–97 (emphasis in original). Rather, the trial court's role is limited to determining "whether the Commonwealth abused its discretion in designating the case as capital." *Id.* at 897.

Although she relies on *Buck* for relief on this issue, Appellant makes no effort to conform her argument to the standard set out in that case. As she did at the hearing on the motion, Appellant simply asserts that there was no evidence presented at the preliminary hearing to support the aggravating factor;

she addresses neither the law applicable to the issue nor the facts relevant to this case.[5]

We need not consider whether or to what extent the pre-trial evidence here was sufficient under the rule of *Buck*. In this case, Appellant has been tried and convicted of first-degree murder and felony theft. Further, the jury unanimously found beyond a reasonable doubt that Appellant killed Mr. Sementelli while in the perpetration of a felony. Any claims of inadequacy Appellant alleges with respect to pre-trial matters have been rendered moot by the "subsequent independent judicial judgment" confirming the existence of the aggravating circumstance in this case.[6] *Commonwealth v. Ballard*, 501 Pa. 230, 460 A.2d 1091, 1092 (1983). *See also Commonwealth v. Lee*, 541 Pa. 260, 662 A.2d 645, 650 (1995) (deeming moot defendant's claims that preliminary hearing judge should have recused himself, as well as the claim that the evidence failed to establish probable cause, where defendant ultimately was found guilty by a jury); *Commonwealth v. McCullough*, 501 Pa. 423, 461 A.2d 1229, 1231 (1983) (concluding that Commonwealth's failure to establish *prima facie* case at preliminary hearing was immaterial where Commonwealth subsequently met its burden of proof beyond a reasonable doubt at trial). Because a jury determined that Appellant killed Mr. Sementelli while in the perpetration of a felony, Appellant is not entitled to relief on her claim that the trial court erred in failing to order a pre-trial dismissal of the aggravating circumstance.[7]

5. Beyond simply claiming there was "no evidence whatsoever to support the aggravating circumstance," the extent of Appellant's argument is that "the Commonwealth unfairly distanced itself from the case of … *Buck*," and "the Commonwealth under *Buck* unfairly and improperly designated Walters [sic] as a Capital Case." Appellant's Brief at 7.

6. At trial, the Commonwealth again elicited from Gaines the statement Mathis made to her about Appellant's plan to kill the victim so that she could steal his car. The defense objected and the trial court ordered the testimony stricken from the record. As noted *supra*, the Commonwealth also presented the testimony of Appellant's friend and fellow inmate, Amanda Horner, to whom Appellant admitted her intention to steal Mr. Sementelli's car so that she could sell it.

7. Appellant makes no challenge to the jury's guilty verdict on the theft charge or its finding of the aggravating circumstance.

402

■ Appellant next claims that the trial court erred in failing to sustain her multiple challenges to capital proceedings based on the fact that "the death penalty is constitutionally deficient on its face and as it applies to [her]." Appellant's Brief at 7. The record reflects that Appellant raised a series of constitutional challenges in the trial court, all of which were rejected. In her brief to this Court, Appellant presents a half-page of argument setting forth no fewer than six purported constitutional violations. Despite the quantity of her claims, Appellant cites not one case in support of her argument; indeed, she makes no argument at all. Appellant simply asserts one constitutional claim after the other, with no legal rationale or authority for any of them.[8] The trial court concluded that all of Appellant's claims either have been rejected by this Court or are incapable of review. We agree. To the extent Appellant is raising here the claims the trial court assumed Appellant was raising in that court, we conclude that the trial court properly denied such claims. *See Commonwealth v. Roney*, 581 Pa. 587, 866 A.2d 351, 360(2005) (holding Constitution does not require that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt), *cert. denied*, 546 U.S. 860, 126 S.Ct. 139, 163

8.  The entirety of Appellant's argument on these claims is as follows: "It is suggest [sic] that Title 42 Pa.C.S. § 9711 et. seq. violates the prohibitions against cruel and unusual punishment because of the mandatory nature of the act. It is further argued that Title 42 Pa.C.S. § 9711 is unconstitutional on its face in that it precludes the jury from exercising the historical right and function to dispense mercy. It was also argued as follows, that Title 42 Pa.C.S. § 9711 et. seq. is unconstitutional on its face because it does not require finding beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, and it places the burden of proof on the accused to prove mitigating circumstances. It is also argued that Title 42 Pa.C.S. § 9711 et. seq. is unconstitutional as a denial of equal protection of the law since the statute creates categories for which the penalty may be imposed which separate and rule out Defendants for which the penalty may not be imposed in a manner that is not rationally related to a legitimate objective. It is further argued that Title 42 Pa.C.S. § 9711 et. seq. is unconstitutional as a violation of the separation of the powers doctrine and that Title 42 Pa.C.S. § 9711 et. seq. is unconstitutional as it applies to the facts and circumstances of the case currently before this Court. Defendant argued that in general, the imposition of the death penalty was unconstitutional." Appellant's Brief at 8.

L.Ed.2d 141 (2005); *Commonwealth v. Moore*, 534 Pa. 527, 633 A.2d 1119, 1130 (1993) (holding death penalty statute does not violate the separation of powers doctrine), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995); *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373, 387–88 (1986) (holding death penalty statute does not favor imposition of death or preclude jury from granting mercy or leniency as it permits consideration of mitigation evidence, including any evidence concerning the character and record of the defendant), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). To the extent Appellant attempts to make additional constitutional claims, we conclude that they are waived for failure to develop them in any meaningful fashion capable of review. *Commonwealth v. Steele*, 961 A.2d 786, 798 n. 12 (Pa.2008) (deeming inadequate appellant's single-sentence assertions in the brief).

■ Appellant next argues that "the Commonwealth failed, in general, to allege the criminal state of mind attributable to ... [Appellant] and, therefore, by inference failed to present sufficient evidence to prove ... [Appellant] guilty of felony murder, in other words, murder committed in perpetration of a felony rather than a general charge of murder." Appellant's Brief at 9. We begin by noting that there is no record evidence that Appellant raised this claim below. Her brief does not indicate that the claim has been preserved and the trial court opinion does not address the issue. Further, Appellant's argument section consists of three short paragraphs wherein she cites, without explanation, three United States Supreme Court opinions: *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). With respect to *Apprendi* and *Jones*, Appellant argues that the "facts that the Commonwealth needs to prove are not sufficient under the dicta set forth under [those cases]." Appellant's Brief at 9. Appellant offers no basis for her reference to *Sattazahn*. These cases do not stand for the same proposition nor do their facts appear to be

related in any manner to the facts of Appellant's case. *See Sattazahn, supra* (no double jeopardy violation where defendant faced second capital proceeding on remand after jury deadlocked on sentence and trial court imposed life pursuant to statute); *Apprendi, supra* (any factual finding that increases the maximum sentence must be made by a jury under a standard of beyond a reasonable doubt); *Jones, supra* (provisions of carjacking statute that set out greater penalties were not mere sentencing considerations and must be submitted to jury). As a result, we do not understand why Appellant relies on these cases. Appellant's argument is vague and confusing. The points she seeks to make are simply incomprehensible. We conclude that the issue is waived for failure to preserve it below and failure to develop it before this Court. *Commonwealth v. Puksar*, 597 Pa. 240, 951 A.2d 267, 293–94 (2008) (holding failure to make or develop argument is fatal to claim); *Steele, supra.*

■ Appellant's final claim is that the jury failed to adequately consider the mitigating evidence presented to it. As noted previously, Appellant proposed three mitigating factors to the jury: her age, her lack of a significant criminal history, and the catchall mitigator. The jury found no mitigating circumstances.[9] In support of her mitigation claim, Appellant presented four witnesses. First, a childhood friend described Appellant as a good student who was the object of teasing classmates who used racial epithets against her. This witness noted that Appellant was a supportive friend who assisted her with her child's illness. Second, a fellow inmate of Appellant's who knew Appellant when the two worked together testified that Appellant was a good friend who came to her aid while in prison. This witness suffered from physical disabilities and described Appellant's acts of kindness toward her while in jail. Third, one of Appellant's high school teachers testified that Appellant was a cooperative and good student with whom she had reconnected once she learned Appellant was in prison.

9. Appellant was 23 years old at the time of the murder. Her record included convictions for theft and fraud, but revealed no prior violent criminal activity.

The teacher explained that she visits Appellant and the two women often pray together. Finally, Appellant's mother testified that Appellant was a good child, as well as a good mother to her own daughter.[10] Mrs. Walter asked the jury to spare Appellant's life.

With regard to the presentation of mitigation evidence, Appellant asserts no error nor alleges any inadequacy. Further, she concedes that the trial judge properly instructed the jurors on the use of mitigation evidence. Appellant insists however that the jurors "totally failed to consider any mitigating evidence" and "despite the fact that mitigating evidence was presented ... somehow chose to ignore this." Appellant's Brief at 10.

The law is clear that the task of determining the existence of mitigating factors is for the jury alone. *Commonwealth v. Treiber*, 582 Pa. 646, 874 A.2d 26, 30–31 (2005), *cert. denied*, 547 U.S. 1076, 126 S.Ct. 1783, 164 L.Ed.2d 528 (2006). A capital jury is not required to find a mitigating factor presented by a defendant, even if the Commonwealth fails to present evidence rebutting the existence of that factor. *Id.* at 30 (citing *Commonwealth v. Breakiron*, 524 Pa. 282, 571 A.2d 1035, 1043 (1990)). As in *Treiber*, the jury here was presented with evidence and "chose, in its discretion, to reject it." 874 A.2d at 31. Appellant points to no error that occurred at the penalty hearing. Essentially, she asks us to substitute our own judgment for that of the jury, a charge we are without authority to undertake. *Id.*

In light of the fact that we have found no merit to any of the claims Appellant raises in this direct appeal, we turn to our statutorily mandated review of the death sentence. This Court is required to affirm the sentence of death unless we determine that 1) it was "the product of passion, prejudice or any other arbitrary factor"; or 2) "the evidence fails to support the finding of at least one aggravating circumstance." 42 Pa.C.S. § 9711(h)(3). Our review of the record does not

10. Mrs. Walter cares for her granddaughter and brings the child to the prison for visitation.

lead us to conclude that the jury's verdict in this case was triggered by an improper factor. Further, we conclude that the evidence presented was sufficient to support the jury's finding of a single aggravating circumstance, to wit, a murder committed while in the perpetration of a felony. Accordingly, we affirm the verdict and the sentence of death.[11]

Judgment of sentence affirmed.

Chief Justice CASTILLE, and Justice SAYLOR, EAKIN, BAER, Justice TODD and Justice McCAFFERY join the opinion.

11. The Prothonotary of the Supreme Court of Pennsylvania is directed to transmit the complete record of this case to the Governor of Pennsylvania pursuant to 42 Pa.C.S. § 9711(i).