FMRR Development                                        :
                                                       :
                        v.                             :
                                                       :
Birdsboro Municipal Authority                          :
                                                       :
Francis X. McLaughlin                                  :
                                                       :
                        v.                             :
                                                       :
Birdsboro Municipal Authority                          :
                                                       :
Appeal of Birdsboro Municipal                          :   No. 229 C.D. 2018
Authority                                              :   Argued: December 11, 2018


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED:  January 3, 2019


Birdsboro Municipal Authority (Authority) appeals from the Berks County Common Pleas Court's (trial court) January 10, 2018 order directing the Authority to pay 6% interest on the stipulated refund amounts to Francis X. McLaughlin (McLaughlin) and FMRR Development (FMRR) (collectively, Owners), from the date of the amended verdict and to install individual meters in accordance with the Authority's Metered Rate Schedule.[1]  The Authority presents two issues for this Court's review: (1) whether an award of post-judgment interest is valid from a

---

[1] On September 30, 2014, the trial court entered an amended verdict in favor of McLaughlin and FMRR, and on November 27, 2017, the parties stipulated to the refund amounts of $17,033.40 and $23,430.99.

date before the order for a specific sum has been issued; and (2) whether a trial court may order relief the plaintiff did not request.[2]  After review, we affirm.

Owners own real property within the Authority's service area, and each property is improved with multi-unit residential apartment buildings or multi-family dwellings.  On September 24, 2010, FMRR acquired title to the residential apartment building commonly known as the Chestnut Arms Apartments (Chestnut Arms) located at 700 East 1st Street in Birdsboro Borough, Berks County, Pennsylvania.  Chestnut Arms consists of 21 residential apartment units which are connected to the Authority's water supply and sanitary sewer system.  Upon FMRR's acquisition, Chestnut Arms was enrolled as the Authority's customer and at all times had 20 Equivalent Dwelling Units (EDU) which the Authority assigned to it.

In September 2008, McLaughlin acquired title to the residential apartment building commonly known as the Maple Springs Apartments (Maple Springs) located at 700 and 800 Union Street in Birdsboro Borough, Berks County, Pennsylvania.  Maple Springs consists of 20 residential apartment units which are connected to the Authority's water supply and sanitary sewer system.  Upon McLaughlin's acquisition, Maple Springs was enrolled as the Authority's customer and at all times had 20 EDUs which the Authority assigned to it.

Each property had a single water meter installed therein which the Authority or its predecessor, Birdsboro Borough, maintained.  The Authority's July 1, 2008 Rate Resolution (Rate Resolution) established four classifications of users for both water and sewer services: domestic, commercial, industrial and public.  There were no subcategories in any classification, and the classifications were not further defined.  The Authority's Metered Rate Schedule provides that rents and charges

---

[2] The Authority included the additional issue of whether a party can waive an issue in a second appeal that was not an issue in the first appeal.  However, this issue is subsumed in the second issue, and will be addressed in the discussion thereon.

2

shall be based upon and shall be computed in accordance with three separate components: a ready-to-serve charge, EDU charges and a consumption charge.[3]

McLaughlin installed individual private water meters at Maple Springs[4] and, by comparing usage data from the meters with the Authority's invoices, he determined that the Authority's consumption charges were significantly higher than those calculated pursuant to the Rate Resolution. Chestnut Arms' consumption charges were also significantly higher than those calculated based on the Rate Resolution.

Owners commenced two separate civil actions in the magisterial district court. The Authority appealed from both decisions to the trial court. The trial court held three hearings and, by July 14, 2014 verdict, initially found in the Authority's favor. On September 30, 2014, the trial court issued an amended verdict in Owners' favor and against the Authority. The trial court directed the parties to submit a proposed order within 30 days covering certain outstanding details.[5] The Authority appealed to this Court before the submission deadline.

---

[3] The ready-to-serve charge is a flat charge of $15.68 per consumer unit per quarter. The EDU charge is a flat fee per quarter dependent only upon the classification of the user which, in the instant case, are domestic establishments and, therefore, $3.50 per unit per quarter. The consumption charges are tiered charges that are directly dependent upon water usage that increase progressively with increased volume/consumption. Specifically, the base charge for water consumption by a single EDU up to a quarterly average of 15,000 gallons is $4.992 per 1,000 gallons. The base charge for sewer service is likewise based on water consumption and the charge per consumer unit is $7.215 per 1,000 gallons.

[4] Although McLaughlin installed individual meters for each unit in Maple Springs, the Authority only uses Authority-installed curbside meters.

[5] The proposed order was to include details relative to an injunction, the escrow money, monetary credits due plaintiffs, and meter installation. *See* Reproduced Record at 211 (Trial Ct. September 30, 2014 Order).

On October 7, 2015, this Court affirmed the trial court's September 30, 2014 order.[6]  The Authority subsequently filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which the Supreme Court denied by a May 11, 2016 Per Curiam Order.  Thereafter, the parties stipulated to the refund amounts of $17,033.40 (Chestnut Arms Apartments) and $23,430.99 (Maple Springs Apartments), but could not agree on interest or the meter installation and payment therefor.  On November 27, 2017, the trial court held a hearing.  On January 10, 2018, the trial court directed the Authority to pay Owners the stipulated refund amounts plus interest at the legal rate of 6% from the date of the amended verdict (September 30, 2014) to present.  The trial court further ordered the Authority to,

> at its own expense, perform or otherwise arrange for the installation of individual meters or accepted and reliable technology that would provide for the determination of water use by each individual consumer of each [Owner], thereby permitting the [Authority] to meet its intended goal of conservation and allow each user to be individually responsible as the [Authority's] Metered Rate Schedule presumes.

Trial Ct. January 10, 2018 Order.  The Authority subsequently paid the stipulated refunds, but appealed from the remainder of the order to this Court.[7]

The Authority first argues that an award of post-judgment interest is not valid from a date before the order for a specific sum has been issued.  Thus, the Authority contends that the interest should run from the stipulation date (November 27, 2017) rather than the amended verdict date (September 30, 2014).  Owners rejoin that it is within the trial court's discretion to award pre-judgment interest in order to

---

[6] This Court referred to the trial court's order by the date it was entered on the docket, *i.e.*, October 7, 2014.  *See FMRR Dev. v. Birdsboro Mun. Auth.* (Pa. Cmwlth. No. 1925 C.D. 2014, filed October 7, 2015).

[7] "Where the issues presented are pure questions of law, our standard of review is *de novo* and our scope of review is plenary."  *Zalman v. City of Chester*, 165 A.3d 82, 84 n.2 (Pa. Cmwlth. 2017).

prevent unjust enrichment. Therefore, Owners maintain that the trial court properly awarded the interest from the amended verdict date.

Initially, Section 8101 of the Judicial Code provides: "Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award." 42 Pa.C.S. § 8101. "Reference in any law . . . to 'legal rate of interest' . . . shall be construed to refer to the rate of interest of six per cent per annum." Section 202 of the Act of January 30, 1974, P.L. 13, *as amended,* 41 P.S. § 202.

However, the Pennsylvania Supreme Court has long held: "[T]he Act of April 6, 1859[, P.L. 381, §1, 12 P.S. § 781 (1953), repealed and recodified in substantially similar form at **42 Pa.C.S. § 8101**] **does not bar an award of pre-verdict interest** in order to prevent unjust enrichment or where the payment of interest is required to avoid injustice." *Sack v. Feinman*, 413 A.2d 1059, 1065 (Pa. 1980) (emphasis added).

Here, the amended verdict was entered on September 30, 2014 with a directive that the parties submit the details within 30 days. The fact that the stipulation was not entered nor an order issued until after the Authority exhausted its appeal rights should not prevent Owners from receiving the interest to which they are entitled. *See Kennedy v. Kennedy*, 865 A.2d 878 (Pa. Super. 2004) (the fact that a party appealed the award does not affect the prevailing party's entitlement to interest from the date of the award). Accordingly, the trial court properly awarded Owners 6% interest on the stipulated amounts from the date of the amended verdict.

The Authority next asserts that **a trial court may not order relief the plaintiff did not request**. Specifically, the Authority claims that because Owners did not seek installation and payment for individual meters, but rather requested only monetary damages, the trial court erred by awarding the same sua sponte. Owners

retort that because the Authority did not argue this assertion in its first appeal to this Court, the issue is waived. The Authority maintains that the issue is not waived, as it did not arise until the trial court entered its January 10, 2018 order. However, the record and the Authority's actions belie the Authority's position.

Initially, the trial court's September 30, 2014 order provided:

AND NOW, this 30 day of September, 2014, this court finds in favor of [Owners] and against the [Authority]. The parties shall submit within thirty (30) days of the Verdict, a proposed order covering, if still applicable, the specific details of

1. A continuing preliminary or permanent injunction;

2. Release of monies held in escrow;

3. Any credits due plaintiffs; and

4. **The installation and payment for meters**.

if the parties are unable to agree on a stipulated order, then this court will schedule oral argument.

Reproduced Record at 211 (emphasis added). The Authority timely appealed from said order to this Court. In its Concise Statement of Errors Complained of on Appeal (Statement of Errors), the Authority averred, *inter alia*:

23. Whether th[e trial] court erred in ordering relief, in the form of its Amended Verdict, **not specifically requested by Plaintiffs**?

24. Whether th[e trial] court erred in ordering relief, in the form of its Amended Verdict, beyond the scope of its authority?

25. Whether th[e trial] court erred in ordering relief, in the form of its Amended Verdict, requiring the parties to form an agreement, to the benefit of Plaintiffs?

26. Whether th[e trial] court erred, as a matter of law, in issuing the Amended Verdict?

6

Supplemental Reproduced Record at 13-14 (emphasis added). Clearly, this issue existed at the time of the Authority's first appeal since the Authority raised the exact issue therein.

However, although the Authority raised the issue in its Statement of Errors, it failed to argue the issue in its brief to this Court. It is axiomatic that

> where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. *Commonwealth v. Walter,* . . . 966 A.2d 560, 566 ([Pa.] 2009); *Commonwealth v. Steele,* . . . 961 A.2d 786, 799 n.12 ([Pa.] 2008); *Commonwealth v. Puksar,* . . . 951 A.2d 267, 293-94 ([Pa.] 2008). *See also* Pa.R.A.P. 2119(a) (each point treated in an argument must be 'followed by such discussion and citation of authorities as are deemed pertinent'). It is not the obligation of this Court, . . . to formulate [the a]ppellant's arguments for him. *Commonwealth v. Wright,* . . . 961 A.2d 119, 135 ([Pa.] 2008); *Commonwealth v. Thomas,* . . . 717 A.2d 468, 482-83 ([Pa.] 1998).

*Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009). Further,

> [the Pennsylvania Supreme Court] ha[s] previously cautioned that a brief which includes citations to pages in the notes of testimony, but no specific arguments concerning reasons why each challenged comment deprived an appellant of his right to a fair trial, constitutes the type of cursory legal discussion which is wholly inadequate to preserve an issue for appellate review. *Thomas,* [717 A.2d] at 482-83 (citing and quoting from *Commonwealth v. LaCava,* . . . 666 A.2d 221, 234-35 ([Pa.] 1995)). . . . As we will not develop [the a]ppellant's arguments for him, these issues are not reviewable.

*Johnson*, 985 A.2d at 925. Here, the Authority completely abandoned the issue by not raising it in its brief to this Court. Consequently, the Authority waived the issue in its first appeal and cannot raise it again in this appeal.

Moreover, as our Supreme Court explained:

> As a general proposition, **this Court should not revisit questions it has already decided**. *See Commonwealth v. Starr,* . . . 664 A.2d 1326, 1331 ([Pa.] 1995) (discussing 'law of the case' doctrine generally). The related rules in the 'law of the case' doctrine operate: '(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.' *Id.*

*Pa. State Ass'n of Cty. Comm'rs v. Commonwealth*, 52 A.3d 1213, 1230 (Pa. 2012) (emphasis added). Here, because this Court has already affirmed the trial court's September 30, 2014 order, *see FMRR Dev. v. Birdsboro Mun. Auth.* (Pa. Cmwlth. No. 1925 C.D. 2014, filed October 7, 2015), we will not now readdress the merits of that decision.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FMRR Development            :
                                     :
                   v.                      :
                                     :
Birdsboro Municipal Authority   :
                                     :
Francis X. McLaughlin        :
                                     :
                   v.                      :
                                     :
Birdsboro Municipal Authority   :
                                     :
Appeal of Birdsboro Municipal    :       No. 229 C.D. 2018
Authority                                 :

## O R D E R

AND NOW, this 3rd day of January, 2019, the Berks County Common Pleas Court's January 10, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge