J-S05001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ARIANE URSCHLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ESTATE OF CLEVA L. HARTMAN, | : | No. 740 WDA 2023 |
| DECEASED | : | |

Appeal from the Order Entered May 22, 2023
In the Court of Common Pleas of Indiana County
Orphans' Court at No(s):  No. 32-22-0105

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: May 17, 2024**

Ariane Urschler appeals *pro se* from the order entered in the Indiana County Court of Common Pleas on May 22, 2023, denying Urschler's claim for payment and damages from the estate of Cleva L. Hartman, Urschler's mother. After careful review, we affirm.

The orphans' court summarized the factual and procedural history of this will dispute as follows:

> Cleva L. Hartman, resident of Indiana County, Pennsylvania, passed from life on January 4, 2022. A Last Will and Testament was admitted to probate on February 16, 2022. On August 29, 2022, John C. Uccellini, Executor of Cleva Hartman's Estate, filed a First and Final Account with an Accompanying Petition for Adjudication. [Urschler] filed an objection, titled "Petition of formal objection to the Petition for the Adjudication/Statement of Proposed Distribution of the Estate of Cleva L. Hartman (Deceased), File No. 32-22-0105," to the First and Final Account on September 23, 2022. Petitioner also filed an objection titled "Petition Contesting Probate of Will" on September 29, 2022.

A status conference was held in this matter on November 8, 2022. At this conference it was determined by the [c]ourt that the two objections should be tried separately. The [c]ourt also drew attention to typographical errors contained within the first objection and granted [Urschler] additional time to file an amended document. [Urschler] filed the "First Amended Claim for Payment and Damages" on December 2, 2022. The Estate then filed a Motion in Limine addressing the Dead Man's Act on January 9, 2023. This Motion sought to bar [Urschler] from offering her own testimony, in relation to her claim as a creditor of Cleva Harman's Estate, as to any matter occurring on or before the death of Cleva Hartman. [Urschler] also filed a document titled "Motion to Allow Evidence on the Issue of Breach of Contract Retaliation" on December 30, 2022. In this filing, [Urschler] argued that the Dead Man's Act was serving as an instrument of retaliation and that it was also being utilized to conceal previous threats and acts of retaliation.

Trial Court Opinion, 5/22/23, at 1-2.

On May 2, 2023, following a non-jury trial, the court entered an opinion and order denying Urschler's claim for payment and damages from her mother's estate.

On June 26, 2023, the trial court clerk docketed Urschler's *pro se* notice of appeal, noting a postmark date of June 20, 2023. In response, the executor of the estate filed an application to quash the appeal as untimely in this Court. Urschler filed a response, claiming the appeal was timely filed within the applicable thirty-day appeal period. Specifically, Urschler asserted the office of the clerk of Orphans' Court of Indiana County "provide[s] the general public with no instruction relative to the office's mail handling procedure to define timely legal filings." Answer to Application to Quash Appeal, 8/16/23. Urschler confusingly proceeded to make unfounded claims of a paid working

- 2 -

relationship between the attorney for the estate and the clerk of the orphans' court. Finally, Urschler stated that she used a November 18, 2022, written instruction from the clerk's office that she received after making a filing date clarification request. Urschler attached a copy of an email response from a deputy at the Indiana County Orphans' Court regarding a previous "filing date clarification request" in which the deputy stated as follows:

> November 28th would be 20 days from November 8th. We would go by the postmarked date rather than the date we receive the filing in case something happens that the mail will get it to us too late. You would just need to mail it by the 28th rather than have us receive it by the 28th.

Answer to Application to Quash Appeal, 8/16/23, at Exhibit 1. Urschler did not indicate to which filing that response was in reference.

This Court subsequently denied the estate's application to quash without prejudice to the moving party's right to raise the issue on appeal. The executor of the estate has raised the issue again in an appellate brief.

Prior to addressing the merits of Urschler's issues, we must first determine whether we have jurisdiction to hear her appeal. Generally, an appellant must file an appeal within thirty days of the date the order was entered. ***See*** Pa.R.A.P. 903. For purposes of Rule 903, an order is entered when it is placed on the docket and notation is made in the record that the court official delivered or mailed copies of the order to the parties. ***See In re K.P.***, 872 A.2d 1227, 1230 (Pa. Super. 2005). "An order is not appealable until it is entered on the docket with the required notation that appropriate

- 3 -

notice has been given." **Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999) (citations omitted). Our Supreme Court has held that compliance with Pa.R.C.P. 236 is necessary for the appeal period to start running. **See id.**

The Orphans' Court Rules require court officials to immediately give written notice of an order to the parties and indicate on the dockets when such notice has been provided. **See** Pa.O.C.R. 4.6. Rule 4.6 was derived from Pa.R.C.P. 236. **See id.**, *Note*. We therefore conclude Pa.O.C.R. 4.6 serves the same function as Pa.R.C.P. 236. An order pursuant to orphans' court jurisdiction is entered, for purposes of Pa.R.A.P. 903 once a court official complies with Rule 4.6.

Here, the docket entries indicate that the clerk recorded the order at issue on May 22, 2023. Directly below this docket entry, the docket indicates: "One certified copy placed in the mailbox of John Barbor in the ROD office, one copy mailed to Ariane Urschler[.]"

Even if the clerk intended this note to convey that the clerk provided notice of the order to the parties on the listed date, we find this note fails to satisfy Rule 4.6's mandate to note on the docket the date that notice was given. "The procedural requirements reflected in the rules serve to promote clarity, certainty and ease of determination, so that an appellate court will immediately know whether an appeal was perfected in a timely manner, thus eliminating the need for a case-by-case factual determination." **Frazier**, 735 A.2d at 115 (citation omitted).

In a similar situation, in **Smithson v. Columbia Gas of PA/NiSource**, 264 A.3d 755 (Pa. Super. 2021), we observed that "[o]n the docket, immediately following the text of a March 25, 2020 order, the typewritten text read: 'SENT TO R & B. SMITHSON, N. PARKER ESQ & A. EBECK ESQ.'" **Id.** at 757. While we acknowledged that the docket entry contained "enough information to infer logically that the note references the prothonotary's provision of notice pursuant to Rule 236[,]" we determined that the docket entry was ambiguous as to whether the Rule 236 notice was sent to the parties on the same day the order was entered on the docket. **Id.** at 760. Accordingly, we concluded "[t]his failure to abide by the strict requirements of Rule 236 constitutes a breakdown in the operation of the trial court[,]" and we declined to quash the appeal as untimely. **Id.** at 757.

Similarly here, it could be inferred that a copy of the May 22, 2023 order was mailed to Urschler and the estate's counsel on the same date that the order was entered on the docket. However, it remains ambiguous whether this is actually the case. It is possible that it was mailed out the Friday before, the next day, or a few days later. We simply have no way of knowing.

Accordingly, although Urschler's notice of appeal was filed in the trial court thirty-two days after the order was recorded, the breakdown in court

operations means that the appeal period never began to run.[1] As such, we do not quash Urschler's appeal as untimely.

We now turn to the merits of Urschler's appeal. In her brief, Urschler sets forth the following issues for our review:

> 1. Did the Indiana County Orphans' Court abuse its discretion and erred [sic] as a matter of law by improperly applying, 207 Pa.C.S.

---

[1] Urschler argued her appeal was timely based on the email she provided that shows that a deputy with the orphans' court advised Urschler that an unspecified document from November 2022 would be received as filed by the postmark date rather than the date the document was received by the court. Urschler did not aver that she did not receive notice of the entry of the order, merely that, based on the email from the clerk's office regarding a prior filing, she believed her appeal was timely. The email does not indicate that the statement in the email is a court-wide policy, or that the instruction would apply to any other type of filing, i.e. an appeal.

Further, while Urschler claims Indiana County fails to provide the public with any instruction on timely filing procedures, our Rules of Appellate Procedure are applicable here and are readily available for anyone. We acknowledge it is likely Urschler's *pro se* status led to her confusion over proper appellate procedure and timelines. Nevertheless, this Court has consistently held

> *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*In re Ullman*, 995 A.2d 1207, 1211–1212 (Pa. Super. 2010) (citations omitted).

The email from a clerk referencing a separate filing not relevant to this appeal is simply not sufficient to support a contention that the orphans' court incorrectly advised Urschler that she could timely file an appeal by the postmark date. We are not empowered to extend the thirty-day appeal period. *See* Pa.R.A.P. 105. As such, this reasoning on its own would not have been enough to overlook the facial untimeliness of the current appeal. We advise Urschler to ensure compliance with our rules of appellate procedure in the future.

Rule 2.11(1) in which [the trial judge]'s impartiality might be reasonably questioned, given the petitioner asserted [the trial judge]'s court was an essential instrument of the Estate's pernicious scheme causing personal, professional, and political consequences to [the trial judge] if he issued an 'approved'?

2. Did the Indiana County Orphans' Court abuse its discretion and erred [sic] as a matter of law by Obstructing the Administration of Law by Breach of Official Duty under 18 PA C.S. Stat § 5101, by [the trial judge]'s intentional use of an Estate created tactic against [Urschler], which almost prevailed, to dismiss the case and avoid an 'approved' Order of Court?

3. Did the Indiana County Orphans' Court abuse its discretion and erred [sic] by improperly applying, 207 Pa. C.S. Rule 2.11(1) in which a judge's impartiality might be reasonably questioned, given [the trial judge] simply refused rule on the Motion to Allow Evidence on the Issue of Breach of Contract Retaliation as tactic of omission to exclude evidence and avoid an 'approved' Order of Court?

Appellant's brief at 5.

Urschler's issue statements and accompanying arguments raised on appeal are somewhat confusing and mostly contain nonsensical, and frankly insulting, accusations against the orphans' court judge. To the best of our ability to decipher Urschler's rambling, repetitive, and frequently incoherent argument on appeal, she seems to argue in all three issues that the trial court judge "weaponized" the Dead Man's Act along with the estate.

In all three argument sections, she only cites to one authority, for a general proposition regarding disqualification of a judge. Urschler copies and pastes this citation in all three argument sections of her brief, and it remains the only citation to case law in her entire argument section. She cites no specific authority supporting her assertions that the judge was impartial for

applying the Dead Mans Act, in violation of Pa.R.A.P. Rule 2119. The brief does not adequately give us cases that contain facts related to Urschler's issues. Her arguments are no more than undeveloped assertions. *See Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) ("[A]rguments which are not properly developed are waived") (citation omitted). Further, she appears to simply copy, paste and repeat the same bullet points of these undeveloped assertions in each section of her brief.

"[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." *Commonwealth v. Lyons*, 833 A.2d 245, 252 (Pa. Super. 2003) (citation omitted). "[A]ny layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." *Commonwealth v. Gray*, 608 A.2d 534, 550 (Pa. Super. 1992) (citation omitted). As such, we cannot serve as Urschler's counsel and litigate her claims for her.

Upon review, Urschler fails to present a coherent legal argument on appeal. Therefore, her arguments are waived. *See Commonwealth v. Walter*, 966 A.2d 560, 567 (Pa. 2009) (finding waiver where argument was vague and confusing).

We note, even if not waived, her issues are without merit. Urschler challenges the court's application of Pennsylvania's Dead Man's Statute

("Dead Man's Act"). The Dead Man's Act is a valid statute under our law, and the orphans' court was simply following the letter of the law in applying it.

The Dead Man's Act provides, in relevant part, as follows:

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, ... and his right thereto or therein has passed ... to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ... party, shall be a competent witness to any matter occurring before the death of said party ....

42 Pa.C.S.A. § 5930.

The rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could make false statements and attempt to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony. The Dead Man's Act is an exception to the general rule of evidence in this Commonwealth that no interest or policy of law ... shall make any person incompetent as a witness.

Under the Dead Man's Act three conditions must exist before the surviving party or witness is disqualified: (1) the deceased must have had an actual right or interest in the matter at issue, *i.e.* an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony— must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.

*In re Fiedler*, 132 A.3d 1010, 1024 (Pa. Super. 2016) (citations and internal quotation marks omitted).

Urschler seeks to evade the provisions of the Dead Man's Act by asserting unsubstantiated claims of a conspiracy and pernicious behavior by

and between the executor for the estate, his counsel, and the trial court judge. Not only does Urschler not point to any evidence in the record to back up these claims, but she also provides no authority for the assertion that the intent of the moving party seeking the protection of the Dead Man's Act is somehow relevant to its application. The orphan's court properly found that the three requirements were met in order for Urschler to be disqualified from testifying. The orphan's court did not err. Hartman had an interest in whether or not she owed her daughter a large sum of money. Urschler's interest is clearly adverse as she is arguing a large sum of money is due to her as a creditor of Hartman and her estate. Hartman's rights are represented by her executor, a party of record. This is a straightforward scenario that the Dead Man's Act seeks to prevent.

As we find Urschler's issues are waived, and otherwise without merit, we affirm the order denying Urschler's claim for payment and damages from the estate.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/17/2024

- 10 -