**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEKOTA JEROME BAPTISTE | : | |
| | : | |
| Appellant | : | No. 3304 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 17, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001184-2017

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 9, 2021**

Appellant Dekota Jerome Baptiste appeals from the judgment of sentence imposed after a jury found him guilty of first-degree murder[1] and related offenses.  On appeal, Appellant raises fourteen issues.  We affirm.

The facts and procedures leading to this appeal are well known to the parties.  Briefly, the Commonwealth charged Appellant for the February 23, 2017 shooting that resulted in the death of Terrence Ferguson (decedent).  At the time of the shooting, Thressa Duarte (Duarte) and at least one other person was a passenger in the decedent's vehicle.  Appellant was twenty-four years old at the time of the shooting.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

The criminal complaint was filed on February 24, 2017, and the Commonwealth filed a criminal information and an amended information on June 15, 2017, and June 20, 2017, respectively. On June 22, 2017, the Commonwealth filed a notice of its intent to seek the death penalty.

On July 28, 2017, Appellant filed an omnibus pretrial motion. On April 27, 2018, the trial court, in relevant part, denied Appellant's motions to suppress Appellant's statements during a police interrogation and evidence obtained from a search of his person. Further, the trial court denied Appellant's motion to preclude the death penalty and to strike the Commonwealth's notice of aggravating circumstances.

Appellant proceeded to a jury trial, during which he testified in support of his self-defense claim. On May 10, 2019, the jury found Appellant guilty of first-degree murder, attempted murder, aggravated assault, recklessly endangering another person, receiving stolen property, possessing an instrument of crime, firearms not to be carried without a license, and fleeing or attempting to elude a police officer.[2] On May 14, 2019, the jury deadlocked on the imposition of the death penalty. On May 17, 2019, the trial court imposed a sentence of life imprisonment for first-degree murder, and an aggregate consecutive term of 233 to 612 months' imprisonment for the remaining offenses.

_____

[2] 18 Pa.C.S. §§ 901(a), 2702(a)(1), (4), 2705, 3925(a), 907, 6106(a)(1), and 3733(a), respectively.

Appellant timely filed post-sentence motions and briefs in support. On July 24, 2019, the trial court granted Appellant's motion for a thirty-day extension to decide the post-sentence motions. On October 14, 2019, the trial court entered an order with a statement of reasons for denying Appellant's post-sentence motions.

Appellant timely appealed and complied with the trial court's order for a Pa.R.A.P. 1925(b) statement. The trial court filed an opinion relying on its order denying Appellant's post-sentence motions but addressing four issues that it previously determined were withdrawn or waived.

Appellant raises the following issues, which we have reordered for review:

A. Whether the trial court erred in allowing [the C]ommonwealth cross-examination of [Appellant,] which presented false evidence to the jury related to the number of gunshot wounds of the [decedent] where the [decedent] was only shot once in the right shoulder?

B. Whether the trial court erred in allowing the rebuttal testimony of Ronald Johnson which testimony was improper due to unfair surprise with no proper notice to the defense?

C. Whether during jury selection, the jury clerk had available to all potential jurors in the jury lounge the television broadcast of news on channel 69 WFMZ of . . . Appellant's alleged criminal activity and involvement in homicide which improperly poisoned the jury panel?

D. Whether the trial court erred in failing to grant Appellant's motion for change of venue/venire where the pretrial publicity was sustained, pervasive, inflammatory, inculpatory, and there was a presumption of prejudice in selecting a fair and impartial jury from Northampton County?

E. Whether the trial court erred in failing to permit direct examination of Appellant pertaining to the subject matter of the [decedent]'s character as a known major drug dealer and said "occupation" known to the Palmer Police Department. This testimony would provide reason and motive for the [decedent]'s attempt to run over Appell[]ant with his car?

F. Whether the trial court improperly permitted evidence of . . . Appellant's prior criminal record history in the nature of juvenile delinquency for conspiracy to commit robbery during the trial?

G. Whether the evidence was insufficient as a matter of law with respect to criminal homicide where the Commonwealth's evidence did not establish that . . . Appellant did not act in self-defense in the death of [the decedent]?

H. Whether the trial court erred when it denied . . . Appellant[]'s motion to suppress statements made by Appellant and Appellant[]'s consent to a personal search by the Palmer Township Police Department as contained in Appellant's omnibus pretrial motion?

I. Whether the trial court erred when it denied [Appellant]'s motion to preclude the death penalty and strike notice of aggravating circumstances?

J. Whether the prosecution failed to preserve physical evidence in the nature of Appellant's car, a 2016 Nissan Versa, preventing the analysis of the event data recorder . . . which may have produced exculpatory evidence of vehicle movement in support of . . . Appellant's claim of self- defense?

K. Whether the Commonwealth exercised preemptory challenges during the jury selection process that violated [Appellant]'s right to an impartial jury free from racial/ethnic or gender discrimination pursuant to *Batson v. Kentucky*[3] in violation of the Equal Protection Clause and Fourteenth Amendment of the United States constitution?

L. Whether the sentence of the court to a mandatory life sentence without the possibility of parole for first degree murder is

_____

[3] *Batson v. Kentucky*, 479 U.S. 79 (1986).

unlawful where the underlying statute is unconstitutional and the sentencing issue was not submitted to the jury pursuant to **Alleyne v. United States**[4]?

M. Whether the mandatory sentence of Appellant to life imprisonment without the possibility of parole for murder of the first degree violates the Eight Amendment prohibition on cruel and unusual punishment?

N. Whether the court erred in denying Appellant['s] request to instruct the jury that in Pennsylvania the mandatory sentence for first degree murder is life imprisonment without the possibility of parole?

Appellant's Brief at 5-7 (some formatting altered).

## 1. Preliminary Matters

### Dismissal Pursuant to Pa.R.A.P. 2101

Initially, we consider the Commonwealth's request that this Court dismiss or quash Appellant's appeal for violations of the Rules of Appellate Procedure and this Court's case law. Commonwealth's Brief at 11-18. The Commonwealth notes, for example, that Appellant has failed to attach his Rule 1925(b) statement to his brief or include a statement of the scope and standard of review. *Id.* at 12-13. The Commonwealth continues that Appellant's summary of argument section fails to discuss the majority of his claims. *Id.* at 13-14. According to the Commonwealth:

Most significantly, the [a]rgument section of his brief contains virtually no citations to the record or relevant case law aside from boilerplate law. He has failed to identify where (or even if) he preserved his issues below and his substantive arguments are so short they fail in any meaningful way to identify or develop the specific issues he is attempting to raise on appeal.

_____

[4] **Alleyne v. United States**, 570 U.S. 99 (2013).

***Id.*** at 17.

> Pennsylvania Rule of Appellate Procedure 2101 states:
>
> Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa.R.A.P. 2101. Chapter 21 of the Rules further outline the requirements for the form and content of an appellant's briefs. ***See e.g.*** Pa.R.A.P. 2111, 2114-2119. Violations of Chapter 21 are substantial when they impede meaningful review. ***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010). However, even if a brief fails to comply with several Chapter 21 rules, this Court may address claims that are sufficiently developed to permit meaningful review. ***See Commonwealth v. Adams***, 882 A.2d 496, 498 (Pa. Super. 2005) (declining to dismiss or quash an appeal despite "numerous defects in [the a]ppellant's brief" and proceeding to address the issue that the appellant adequately developed for appellate review).

Following our review, we agree with the Commonwealth that Appellant's brief fails to "conform in all material respects with the requirements of [the Rules of Appellate Procedure]." ***See*** Pa.R.A.P. 2101. However, having reviewed Appellant's brief as a whole, we conclude that the defects are not so substantial that they would preclude us from reviewing any of the issues Appellant raises on appeal. Accordingly, we do not dismiss the appeal, and

will instead consider the Commonwealth's arguments concerning Appellant's defective brief on an issue-by-issue basis. **See Adams**, 882 A.2d at 498.

**Issue Preservation**

Next, we consider the trial court's and the Commonwealth's assertions that Appellant waived his first six issues by failing to preserve them in the trial court and by abandoning them in the briefs he filed in support of his post-sentence motion. Specifically, both the trial court and the Commonwealth contend the Appellant waived his claims concerning (1) a change of venue or venire, (2) taint in the jury pool, (3) the presentation of false evidence when cross-examining Appellant, (4) the trial court's permission of rebuttal testimony from Ronald Johnson, (5) the trial court's improper limitation on Appellant's testimony regarding the decedent's character, and (6) the trial court's ruling to admit evidence of Appellant's prior juvenile adjudication for conspiracy to commit robbery. **See** Order, 10/14/19, at 11-12, 23-24; Commonwealth's Brief at 32-33, 35-36, 37-38, 42, 46-47, 55.

It is well settled that an appellant must preserve his appellate issues before the trial court. **See** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); **Commonwealth v. Cline**, 177 A.3d 922, 927 (Pa. Super. 2017). Further, as this Court has stated, "one must object to errors, improprieties or irregularities at the earliest possible stage of the criminal or civil adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter."

*Commonwealth v. Strunk*, 953 A.2d 577, 580 (Pa. Super. 2008) (citation and quotation marks omitted). One of the purposes of the rules concerning issue preservation is to encourage the finality of trial court holdings and discourage counsel from seeking relief "from an adverse verdict by the thought that an appellate court may seize upon a previously unclaimed error and afford relief on a ground not called to the trial court's attention." *See Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 116 (Pa. 1974).

Instantly, a review of the trial court's finding of waiver reveals the following. Appellant did not move for a change of venue or venire in the trial court. Although Appellant raised a claim of possible taint as to one panelist based on a news cast that had been playing in the jury assembly area, that individual was not seated on the jury. Further, Appellant did not assert that this taint required a new jury pool. Therefore, we are constrained to conclude that Appellant waived his issues concerning a change of venue or venire and the possibility of taint. *See* Pa.R.A.P. 302(a); *cf. Commonwealth v. Baumhammers*, 960 A.2d 59, 74 (Pa. 2008) (concluding that the appellant waived his claim concerning a change of venue or venire because, on appeal, he was "essentially arguing that the court erred by sustaining [his] own objection").

Similarly, the record confirms that Appellant did not object to either the Commonwealth's question during cross-examination as using false evidence, nor did he object to the alleged lack of notice and unfair surprise surrounding

- 8 -

the Commonwealth's presentation of Johnson as a rebuttal witness. Accordingly, those issues are also waived. *See* Pa.R.A.P. 302(a).

To the extent Appellant claims that the trial court erred in limiting his testimony regarding the decedent's character, the record reveals that the parties addressed this issue on the record at trial. *See* N.T., 5/10/19, at 21-24. However, the record reflects that the although the trial court sustained the Commonwealth's objection to a lack of foundation, the court did not preclude Appellant from testifying about the decedent's character. *See id.* at 24 (indicating that the trial court stated it would allow further testimony later in the direct examination of Appellant and that trial counsel stated he would return to that issue "at a later point"). Further, Appellant does not cite to any portion of the record that demonstrates that he attempted to present such evidence and that the trial court precluded his testimony.[5] Under these circumstances, we conclude that Appellant failed to preserve this issue for appellate review. *See* Pa.R.A.P. 302(a).

Finally, as to Appellant's claim that the trial court improperly permitted the Commonwealth to introduce evidence of his juvenile adjudication, Appellant expressly abandoned this claim in his brief in support of his post-sentence motions. Specifically, Appellant indicated that this issue was meritless. Because Appellant withdrew this issue from consideration when the

---

[5] As noted by the trial court, Appellant also expressly withdrew this claim from the trial court's consideration in his brief in support of his post-sentence motions. In his post-sentence motion, Appellant asserted that the issue of his testimony concerning the decedent's character was waived.

trial court had an opportunity to grant relief, he cannot revive it in this appeal. *Cf. Dilliplaine*, 322 A.2d at 116. Accordingly, we conclude that this claim is waived.

In sum, we agree with the trial court and the Commonwealth that Appellant waived his first six issues, and we therefore decline to address them in this appeal.

## 2. Sufficiency of the Evidence

Appellant claims that the evidence was insufficient to support his conviction for first-degree murder because "he was acting in self-defense when he fired at the decedent's vehicle." Appellant's Brief at 14.

By way of background, the trial court summarized the trial evidence as follows:

[Appellant] stated at the time of trial that he had known Duarte for about ten years, and they met in high school. [Appellant] testified that he has visited the Duarte home, located on Ferry Street in Easton, Pennsylvania, "a couple times." While at Duarte's house on Wednesday, February 22, 2019, [Appellant] testified that [the decedent] arrived and pounded on the door in an "angrily and aggressive manner."

This is the first encounter between [Appellant] and [the decedent]. [Appellant] recalled that Duarte opened the door, and [Appellant] observed [the decedent] wearing a hoodie jacket with the hood up, and [the decedent]'s right arm was in the jacket pocket, which [Appellant] claimed made him feel "threatened and scared for [his] life." According to Appellant, the bulge in [the decedent]'s pocket signified that [the decedent] was carrying a weapon. [Appellant] stated [the decedent] then "stormed out the door." This is the "situation" referred to by [Appellant] *infra*.

[Appellant] testified that the following day, February 23, 2017, he arrived at Duarte's house at approximately 6:00 p.m. and he remained there for couple minutes." Next, Duarte's mother drove

[Appellant] and Duarte from the Duarte household in Easton, Pennsylvania, to Duarte's grandmother's senior citizen home, only a few blocks away. [Appellant] stated that they were at Duarte's grandmother's home for a short period of time. [Appellant] recalled that he remained inside of the car, and Duarte and her mother exited the vehicle and entered the building. It was here that [Appellant] and [the decedent] had their second encounter. While in the car, [Appellant] observed [the decedent's] vehicle drive up and park next to where [Appellant] was located. When Duarte exited her grandmother's house, Duarte entered the [decedent's] vehicle. [Appellant] stated that Duarte's mother dropped him off at his vehicle, then he visited a friend, and then drove through Easton.

[Appellant] stated that as he was driving, he identified the car in front of him as the [decedent's] vehicle, and [Appellant] followed that vehicle down an alleyway and then parked beside it. This is the third encounter between [Appellant] and [the decedent]. [Appellant] asked [the decedent] if they could talk about the situation that took place on the day prior, Wednesday, February 22, 2017.

[Appellant] then followed [the decedent]'s vehicle to AutoZone, located at 2503 Nazareth Road [in] Easton . . . . This was the fourth and final encounter between [Appellant] and [the decedent].

April Drake (Drake), an employee working at the McDonald's across from the AutoZone, testified that she observed the incident while working at the drive thru window. Drake's testimony revealed that as the two cars entered the AutoZone, the car identified as [Appellant] drove over a median. [Appellant] recalled exiting his vehicle, walking over to the [decedent's] vehicle, and telling [the decedent] that he did not want problems between the two of them. [Appellant] testified that he believed the issues between him and [the decedent] were resolved. [Appellant] stated that as he was walking back to his car, he heard tires screeching and saw [the decedent] moving his car towards [him]. [Appellant] testified that [the decedent] used his car to hit [him], more specifically [Appellant] claimed:

Once the first hit landed, it took my knees out. I went to the ground. Now, at that point, because of the impact to the car hitting my car, now the backside of my bumper --- my car do a 180-degree spin, turn, so at that point, the back

- 11 -

bumper is coming full speed at me nearly almost taking my whole upper body out, so I had to roll out of the way. At that point, now, the cars are pitched together. All I think at this point is survival, at this point, and defending myself.

[Appellant] further claimed that [the decedent] used his car to hit him four more times. After claiming to be knocked down to the ground again, [Appellant] stated he "reached for my firearm with my left hand and started shooting." After the shooting, [Appellant] left the AutoZone because he claimed he was panicked, scared and nervous.

Ronald Johnson . . . , who was a passenger in the back seat of [the decedent's] car, presented facts contrary to [Appellant's] recital. Johnson stated that he is a mechanic, and [the decedent] was driving to the AutoZone to get car parts, and then Johnson was going to work on Ferguson's car. Johnson testified that, on the day in question, he and a woman named Michelle were picked up by "Lex," which is a nickname for [the decedent], on Walnut Street at approximately 5:00 p.m. or 6:00 p.m., and "Tess" was also in the car. The name "Tess" was a reference to Duarte. Johnson sat on the passenger's rear side and Michelle sat on the driver's rear side. Johnson testified that [the decedent] pulled the car over on Union Street, and [Appellant] pulled up next to [the decedent]. Johnson stated that he heard [Appellant] say to [the decedent], "you disrespected me with my girlfriend." Johnson said that [the decedent] drove away, and [Appellant] was driving erratically and chasing them.

Johnson's testimony reiterated Drake's testimony, stating that he observed [Appellant] driving across the median. Johnson stated that he suggested to [the decedent], "don't stop, just pull back out again and see if he would stop doing what he's doing." Johnson testified that [the decedent] circled around and parked in the AutoZone parking lot.

Johnson stated he got out of the vehicle and observed [Appellant] exit his car and shout at [the decedent]. Johnson testified that he went into the AutoZone, but was unable to make a purchase "because of what was going on outside." Although not in chronological order, Johnson continued to testify about the incident. Johnson testified that he "was outside the [AutoZone] door when the shots were going off." Johnson stated that he observed "cars bumping into each other" with drivers in both vehicles, and one car blocking the other's exit. Johnson stated

- 12 -

the [decedent's] vehicle attempted to exit, but [Appellant] was blocking the path, and [the decedent] hit [Appellant] while [Appellant] was inside of his car. Johnson recalled [Appellant] exited his vehicle, and [the decedent] did not attempt use his vehicle to hit [Appellant]'s body.

Order, 10/14/19, at 2-6 (record citations omitted).

The trial court also noted that the trial evidence indicated that Appellant fired through the front passenger side of the decedent's vehicle. *Id.* at 30. Further, the trial court summarized evidence indicating that a police officer had attempted to stop Appellant's vehicle shortly after the shooting and that, although the officer's lights and sirens were activated during the pursuit, Appellant did not stop his vehicle for two to five minutes. *Id.* at 7. The trial court also noted that Appellant testified that he disposed of his gun while he was driving, but that officers later recovered the firearm. *Id.*

Appellant challenged the sufficiency of the evidence in his post-sentence motion, and the trial court rejected the claim, explaining that the Commonwealth's evidence established that Appellant did not act in self-defense. *Id.* at 30. Specifically, the trial court concluded that the Commonwealth established that Appellant (1) was not free from fault in provoking the encounter, (2) did not reasonably believe he was in imminent danger, and (3) violated a duty to retreat. *Id.* at 30-32.

On appeal, Appellant contends that "the decedent was the aggressor in this matter." Appellant's Brief at 15. Appellant emphasizes that the decedent appeared to threaten him when they first met at Duarte's home, that their subsequent encounters involved "a series of events that escalated in

- 13 -

aggression[,]" and that the decedent attempted to run Appellant over, until "Appellant believed that he had no choice but to fire at the vehicle." *Id.* at 15-16. Appellant concludes that, "[b]ased on the evidence, the jury should have acquitted . . . [him] of the most serious charges."[6] *Id.* at 16.

The Commonwealth responds that it presented ample evidence that Appellant provoked the incident leading to the shooting and that he failed to retreat. Commonwealth's Brief at 22-23. The Commonwealth adds that "the jury was free to infer Appellant's guilt and disbelieve his self-defense claim based on his inconsistent and contradictory statements to police." *Id.* at 23 n.15.

> In reviewing a sufficiency claim, our standard of review is as follows:
>
> Because a determination of evidentiary sufficiency presents a question of law, our standard or review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient

---

[6] In footnote 1 of his brief, Appellant adds that he "also challenges the convictions of attempted murder, recklessly endangering another person, and possessing instruments of a crime on the grounds that he was acting in self-defense when he fired the gun." Appellant's Brief at 14 n.1. The Commonwealth asserts that Appellant's failure to develop any arguments based on the elements of those offenses. While we agree with the Commonwealth's assertion of waiver, any derivative claim concerning these other charges fails based on our conclusion that Appellant's principal assertion is meritless.

We also note that Appellant briefly refers to challenging the weight of the evidence. However, Appellant waived this claim because he failed to raise it in his post-sentence motions. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Williams***, 176 A.3d 298, 305-06 (Pa. Super. 2017) (citations omitted and some formatting altered).

Under the Crimes Code, self-defense is a defense of justification, which is a complete defense to criminal liability. ***See*** 18 Pa.C.S. § 502. We have explained that

[t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. ***See*** 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt.

***Commonwealth v. Bullock***, 948 A.2d 818, 824 (Pa. Super. 2008) (citation omitted).

To disprove a defendant's claim of self-defense, the Commonwealth must establish at least one of the following:

1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

*Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa. Super. 2005) (citations and quotation marks omitted).

"When the defendant's own testimony is the only evidence of self-defense, the Commonwealth must still disprove the asserted justification and cannot simply rely on the [fact-finder's] disbelief of the defendant's testimony[.]" *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014). "If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to 'reject or accept all, part or none of the testimony of any witness.'" *Id.* (citation omitted).

Upon our review, we agree with the trial court that that the Commonwealth presented sufficient evidence to disprove Appellant's self-defense claim by demonstrating that Appellant provoked or escalated the encounter that led to the shooting. Specifically, the Commonwealth presented testimony from Johnson, who stated that Appellant followed the decedent's vehicle, confronted the decedent about disrespecting Appellant and his girlfriend, and then continued to follow the decedent's car to the AutoZone parking lot in an erratic manner shortly before the shooting. *See* N.T., 5/10/19, at 170-71. Johnson specifically testified that the decedent did not try to run over Appellant with his vehicle. *See id.* at 179. On this record, we conclude that the jury was entitled to accept Johnson's testimony, find Appellant at fault for provoking the incident, and reject Appellant's claim of self-defense. *See Smith*, 97 A.3d at 788. Accordingly, Appellant's challenge to the sufficiency of the evidence fails.

### 3. Suppression

Appellant next claims that the trial court erred in denying his motion to suppress his statements and the physical evidence seized by the police. Appellant's Brief at 17. Appellant contends that his waiver of his **Miranda** rights was the product of coercion, because he was "held late at night and subjected to physical discomfort and badgering by police officers for two hours." **Id.** at 19. Appellant further asserts that "any physical evidence that was seized as a result of his unlawful interrogation should have also been suppressed." **Id.**

When reviewing a suppression ruling, our standard of review is as follows:

> [W]e determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Mitchell**, 902 A.2d 430, 450-51 (Pa. 2006) (citations omitted). "It is within the suppression court's sole province as fact[-]finder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Clemens**, 66 A.3d 373, 378 (Pa. Super. 2013) (citation omitted).

Initially, we note that Appellant's brief is undeveloped on this issue. Appellant fails to cite the suppression record, and he instead relies on general references to his argument that officers "badgered him" and subjected him to physical discomfort for two hours.[7]  **See** Appellant's Brief at 10, 19.  The absence of a developed argument violates Pa.R.A.P. 2119 and substantially impairs this Court's ability to review Appellant's instant claim.  Therefore, we conclude that Appellant has waived this issue on appeal.  **See Adams**, 882 A.2d at 498.

In any event, we consider that the trial court addressed this issue in its order denying Appellant's post-sentence motion, and the record reveals ample support for the trial court's findings of fact and conclusions of law when denying Appellant's suppression motion.  Specifically, the trial court rejected Appellant's claims that officers unlawfully obtained his **Miranda** waiver, his statements, or a DNA buccal swab, the last of which was obtained pursuant to a warrant.  **See** Order 4/17/18, at 12-16; **see also** N.T., 1/26/18, at 13-18 (indicating that following his arrest, Appellant was taken to the police station and placed in his holding cell at 8:35 p.m., at which time police took his shoes, belt, or other clothing that he could use to harm himself, and that Appellant waived his **Miranda** rights at the beginning of the interrogation in an interview room that lasted from 10:00 p.m. to 11:58 p.m.).  Accordingly,

---

[7] Appellant did not testify at the suppression hearing.

Appellant's arguments establish no basis to disturb the trial court's ruling. *See Mitchell*, 902 A.2d at 450-51. Therefore, no relief is due.

### 4. Death Penalty and Notice of Aggravating Circumstances

In his next issue, Appellant asserts the trial court erred in denying his motion to preclude the Commonwealth from proceeding with a death penalty trial. Appellant's Brief at 20. By way of background to this claim, on June 22, 2017, the Commonwealth filed notice of intent to seek the death penalty based on two aggravated circumstances: (1) that the killing was committed while in perpetration of felony offenses and (2) Appellant created a grave risk to others. Appellant filed a motion to preclude the death penalty and strike the Commonwealth's notice of aggravating circumstances as part of his omnibus pre-trial motion. According to Appellant, the Commonwealth's evidence was insufficient to establish the circumstances cited by the Commonwealth, and he requested a hearing pursuant to *Commonwealth v. Buck*, 709 A.2d 892 (Pa. 1998).

Following a hearing, the trial court denied Appellant's motion and concluded that Appellant's argument was "inconsistent with Pennsylvania law." Order, 4/17/18, at 17. The trial court explained:

> The Commonwealth bears no "pre-trial burden of proving an aggravating factor." [*Buck*, 709 A.2d at 896]. It is for the jury, not this [c]ourt, to determine whether the death penalty is appropriate. If the Commonwealth "files a notice of aggravating circumstances which includes at least one aggravating factor that is supported by any evidence, the case is properly framed as a capital case." . . .

> Here, the Commonwealth used its initial discretion to categorize this matter as a capital case. The Commonwealth charge[d] [Appellant] with other felonies stemming from the same incident, namely attempted homicide, aggravated assault and receiving stolen property. Further, testimony revealed evidence that [Appellant] knowingly created a grave risk of death to Thressa Duarte. This case [was] appropriately designated as a capital murder case . . . .

*Id.* at 17-18.

In his post-sentence motion, Appellant renewed his claim that the evidence did not support the Commonwealth's notice of aggravating circumstances. The trial court denied Appellant's post-sentence motion, expanded upon its earlier discussion of *Buck*, and further concluded that Appellant failed to establish purposeful abuse in the Commonwealth's decision to proceed under the death penalty. Order, 10/14/19, at 21-22.

> In his brief in this Court, Appellant asserts:
>
> In the instant matter, the [trial] court upheld the Commonwealth's aggrav[a]ted circumstance and denied the motion to preclude the death penalty despite lacking the sufficient evidence to proceed with it in the sentencing phase. As a result, the Commonwealth was able to strike jurors who would have been more receptive to the Appellant's self-defense argument. As a result, the verdict should be overturned and . . . Appellant should be granted a new trial.

Appellant's Brief at 21. Appellant acknowledges that he was sentenced to life in prison, but he asserts that "the empanel[]ed jury had a significant impact on his case" because a capital jury is less likely to acquit a defendant. *Id.* Appellant also references case law, including *Buck*, establishing that it is

inappropriate for a trial court to issue a pretrial ruling on whether testimony regarding aggravating circumstances will be sufficient. *Id.* at 20.

The Commonwealth responds that the basis of Appellant's claim is "unclear" because Appellant's arguments shift from suggesting that the trial court erred in ruling on his claim before trial to challenging the adequacy of the evidence supporting the aggravating circumstances. Commonwealth's Brief at 28. Nonetheless, the Commonwealth argues that the trial court properly denied Appellant's pre-trial motion to preclude the death penalty and strike the notice of aggravating circumstances. *Id.*

In **Buck**, our Supreme Court stated:

> We recognize that the prosecutor possesses the initial discretion regarding whether to seek the death penalty in a murder prosecution. That discretion, however, is not unfettered.
>
> In **Commonwealth v. Buonopane**, [599 A.2d 681 (Pa. Super. 1991)], the Superior Court held that the trial court had no authority to examine the methods employed by the prosecutor in making the determination of whether to proceed with a murder prosecution as a capital case. The court further held that absent a threshold showing of a valid claim of purposeful abuse, a trial court's pre-trial determination regarding proposed aggravating factors violated the constitutional principle of separation of powers. Thus, the court implicitly recognized that in limited circumstances the prosecutor's designation of a case as capital could be challenged.
>
> We find that a valid claim for purposeful abuse exists when the Commonwealth files an unwarranted notice of aggravating circumstances. Implicit in the notice requirement is the presumption that the allegations contained therein are based upon verifiable facts. It is well-established that the Commonwealth has no pre-trial burden of proving an aggravating factor. However, the trial court must be able to ensure that the Commonwealth is not seeking the death penalty for an improper reason. The nature of the court's inquiry is focused solely upon whether the case is

- 21 -

properly designated as capital, not whether each aggravating factor alleged is supported by evidence. We note that, pursuant to 42 Pa.C.S. § 9711(c)(1)(i), the trial court is required to instruct the jury to consider only aggravating circumstances for which there is some evidence. Thus, if the Commonwealth files a notice of aggravating circumstances which includes at least one aggravating factor that is supported by any evidence, the case is properly framed as a capital case. Whether any particular aggravating circumstances should be submitted for the jury's consideration can be determined by the court before the jury retires to consider a verdict.

A defendant who claims that there is no evidence supporting the notice of aggravating circumstances bears the burden of proving that contention. If the defendant fails to meet this burden and evidence exists to create a factual dispute regarding whether the aggravating factor(s) exist, the defendant's motion should be summarily denied as no abuse of discretion by the prosecutor is apparent. To the contrary, however, if the defendant makes a showing that no evidence exists to support the aggravating circumstance alleged, the trial court may require minimal disclosure by the Commonwealth. If no evidence is presented in support of any aggravating circumstance, the trial court may rule that the case shall proceed non-capital. This ruling shall be without prejudice to the Commonwealth to file an amended . . . notice if it subsequently becomes aware of evidence in support of an aggravating factor.

***Buck***, 709 A.2d at 896-97 (some citations and footnotes omitted); ***see also***

***Commonwealth v. Walter***, 966 A.2d 560, 565 (Pa. 2009).

Instantly, we agree with the Commonwealth that Appellant's claims change and are difficult to follow. Nonetheless, to the extent Appellant argues that there was insufficient evidence supporting the Commonwealth's notice of aggravating circumstances, Appellant cites case law that supports the trial court's reasons for denying Appellant's pre-trial motion challenging the sufficiency of the evidence. ***See*** Appellant's Brief at 20 (citing

- 22 -

*Commonwealth v. Buonopane*, 599 A.2d 681, 684 (Pa. Super. 1991) for the proposition that "'the prosecution has no inherent burden to prove pretrial that aggravating factors exist'" and *Commonwealth v. Scarfo*, 611 A.2d 242, 260-61 (Pa. Super. 1992), for the proposition that "it is inappropriate to issue a pretrial ruling on whether the testimony will be sufficient" before the penalty hearing, and *Buck*, although *Buonopane* and *Scarfo* pre-dated *Buck*). Moreover, although the jury deadlocked on the imposition of the death penalty, it found Appellant guilty of several felony offenses including the murder of the decedent and the attempted murder of Duarte, who was seated in the front passenger seat of the decedent's vehicle when Appellant shot past her and struck the decedent. *Cf. Walter*, 966 A.2d at 565 (noting that a subsequent finding by a jury may render moot a pre-trial challenge to aggravating circumstances).

For these reasons, Appellant's claim that there was no evidence supporting the notice of aggravating circumstances lacks merit. Accordingly, the trial court properly denied Appellant's pre-trial motion seeking to preclude the death penalty and strike the notice of aggravating factors.[8] Therefore, no relief is due.

### 5. Preservation of Evidence

---

[8] Further, because the record and law supported the trial court's ruling denying Appellant's pre-trial motion to preclude the death penalty and strike the notice of aggravating circumstances, we discern no merit to Appellant's contention that the Commonwealth's decision to proceed under the death penalty prejudiced jury selection or the outcome of trial.

Appellant claims that the Commonwealth's failure to preserve the event data recorder from his own vehicle requires a new trial because the police had custody over his car after the shooting, but favorable information was lost after the police released it to his insurance company. Appellant's Brief at 30. Appellant contends that the recorder from his vehicle could contain information corroborating his trial testimony about the incident in the AutoZone parking lot and support his claim of self-defense. *Id.* at 30. For these reasons, Appellant asserts that Commonwealth acted in bad faith. *Id.* Appellant's argument includes general principles stated in *Commonwealth v. Daidone*, 684 A.2d 179 (Pa. 1996),[9] and *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992). *Id.* at 30-31.

As noted above, the Commonwealth argues that Appellant's failure to comply with Chapter 21 of the Rules of Appellate Procedure prevent meaningful review. Commonwealth's Brief at 17, 39. The Commonwealth further asserts that Appellant waived this claim by failing to object at the earliest opportunity and apparently raising it for the first time in his post-sentence motion. *Id.* at 39. In any event, the Commonwealth argues that Appellant failed to establish that it acted in bad faith because the police had custody of the vehicle for one year before releasing it and Appellant did not

---

[9] Appellant cites to *Daidone* using the name "Martorano," who was another appellant in that case. *See Daidone*, 684 A.2d 179 (listing both Albert Daidone and Raymond Martorano as appellants). However, because Daidone is listed as the lead appellant, we refer to the case as "*Commonwealth v. Daidone*" or "*Daidone*."

request an inspection of the vehicle until two weeks before trial. *Id.* at 40-41.

The trial court did not discuss waiver, but concluded Appellant failed to establish a claim of prosecutorial misconduct. As the trial court explained:

> Bad faith is required for a due process violation where merely potentially useful evidence is destroyed before the defense has the opportunity to examine it. *Commonwealth v. Snyder*, 963 A.2d 396 (Pa. 2009).
>
> [Appellant] argues that [his] car was released to an insurance company prior to [his] attempt at extracting information from the Event Data Recorder in the vehicle. The record establishes that [his] vehicle was towed to the Palmer Police Department, and then stored there for one year. During that time, the car was available for inspection. Despite having more than ample time to do so, [Appellant] did not request an inspection of the vehicle until after its release. The record is void of any bad faith on behalf of the Commonwealth. Therefore, the [Commonwealth] made [Appellant]'s car, a 2016 Nissan Versa, available to the [d]efense for a reasonable period of time.

Order, 10/14/19, at 22-23.

Following our review, we agree with the Commonwealth that Appellant's failure to cite in the record where he preserved this claim before the trial court warrants a finding of waiver. *See* Pa.R.A.P. 302(a), 2117(c), 2119(e). We note that Appellant's two citations in his brief are misplaced because neither *Daidone* nor *Smith* directly involve a claim of prosecutorial misconduct based on the alleged loss of evidence. Rather, those cases concerned whether double jeopardy barred retrial due to the Commonwealth's misconduct and not the ruling on the misconduct itself. *See Daidone*, 684 A.2d at 182-84; *Smith*, 615 A.2d at 324. Moreover, Appellant's bald assertion that the

Commonwealth acted in bad faith fails to raise any meaningful challenge to the trial court's determinations that the recorder, or the information contained therein, constituted potentially useful information and that Appellant failed to establish the Commonwealth's bad faith. Accordingly, while we find this issue waived, Appellant's argument merits no relief. *See* Pa.R.A.P. 302(a), 2119(a), (c); *see also Commonwealth v. Wholaver*, 177 A.3d 136, 160 (Pa. 2018).

### 6. *Batson*

Appellant asserts that the trial court erred in failing to sustain his *Batson* challenge. Appellant's Brief at 35. Appellant asserts that the jury pool consisted of 136 total possible jurors but only 3 African Americans. *Id.* at 36. Appellant further notes that the Commonwealth peremptorily struck Juror 34, an African American, which did not exhaust its peremptory strikes. *Id.* Appellant argues that the Commonwealth's explanation for its strike concerned the juror's hesitation to general questions concerning the principles and the conduct of trial, but that the Commonwealth accepted jurors who expressed similar hesitations after further questioning and rehabilitation. *Id.* at 37. Appellant concludes that he is entitled to a new trial because "the jury pool was not reflective of his race or the population of the county" and the Commonwealth failed to "provide a logical race neutral reason" for striking Juror 34. *Id.* at 37.

The Commonwealth argues that the trial court properly rejected Appellant's *Batson* claim concerning Juror 34. Commonwealth's Brief at 50.

According to the Commonwealth it presented several race-neutral reasons for striking Juror 34, the record supported those reasons, and the trial court accepted those reasons as race-neutral. *Id.* at 52-53. The Commonwealth adds that Appellant provides no record support that it did not strike other jurors with similar issues. *Id.* at 53. The Commonwealth concludes that Appellant failed to establish purposeful racial discrimination. *Id.* at 54.

A *Batson* claim presents mixed questions of law and fact. *Commonwealth v. Edwards*, 177 A.3d 963, 971 (Pa. Super. 2018). Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous. *Id.* This Court has explained:

> In *Batson*, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution. When a defendant makes a *Batson* challenge during jury selection:
>
>> First, the defendant must make a prima facie showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the prima facie showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

*Id.* (citations and quotation marks omitted). "The trial court should consider the totality of circumstances when determining whether the prosecutor acted with discriminatory intent or engaged in purposeful discrimination."

- 27 -

***Commonwealth v. Towles***, 106 A.3d 591, 602 (Pa. 2014) (citation omitted).

This Court must give great deference to the trial court's finding about the absence of discriminatory intent in peremptory challenges, and we will not overturn it unless it is clearly erroneous. ***See id.***

Instantly, the trial court addressed Appellant's claim as follows:

[Appellant] established a *prima facie* case because (1) [Appellant] is an African American, (2) the Commonwealth exercised a preemptory challenge against Juror 34, who was a member of the [Appellant]'s race, and (3) [Appellant] made a statistical and circumstantial argument.[10]   In the last prong of the *prima facie* case, [Appellant] states that out of 136 total jurors, there were three African Americans.   [Appellant] argues that the Commonwealth only utilized seven of the available twenty preemptory strikes, which [Appellant] suggests is evidence that the Commonwealth calculated its use of preemptory challenges. In addition, [Appellant] argued that the Commonwealth accepted the rehabilitation of other jurors, who were non-African American.

After this court's *prima facie* finding, the burden shifted to the Commonwealth to articulate a race-neutral explanation for striking Juror 34.   The individual *voir dire* of Juror 34 raised multiple issues for the Commonwealth.   The Commonwealth based the preemptory strike of Juror 34 on the basis that he "had some hesitation regarding all doubt versus reasonable doubt.  He had some hesitation concerning motive.  He wanted to know motive. And . . . his comment [regarding graphic exhibits]. . . I don't know if I'm going to have nightmares about this."   The Commonwealth further explained saying, "My confidence [in Juror 34] is whether he would pay attention to the exhibits based upon his reluctance to look at stuff, even though he said he would be

---

[10] Both Appellant and the trial court referred to Appellant and the prospective juror's race.  As this Court noted, the United States Supreme Court makes clear that a "defendant may object to race-based exclusions of jurors through the use of peremptory challenges regardless of whether the defendant and the excluded jurors share the same race." ***Commonwealth v. Hill***, 727 A.2d 578, 584 n.7 (Pa. Super. 1999) (discussing ***Powers v. Ohio***, 499 U.S. 400 (1991)).

impartial, it's certainly a basis for us to have some hesitation about this juror."

This [c]ourt concluded that Juror 34 was inconsistent and arguably unconvincing enough for the Commonwealth to show that a race-neutral, rather than a discriminatory, reason was relied upon when striking Juror 34.

Order, 10/14/19, at 27-28.

Following our review of the relevant *voir dire* transcript, the hearing on Appellant's **Batson** challenge, the parties' arguments at the trial and in this appeal, the trial court's findings of fact, conclusions of law, and its reasoning, we affirm. The record supports the trial court's findings of fact and the trial court appropriately considered whether the Commonwealth presented a race-neutral reason for striking Juror 34. **See Towles**, 106 A.3d at 602; **Edwards**, 177 A.3d at 971. Appellant presented statistical and circumstantial evidence to support his claim of *prima facie* claim of discrimination;[11] however, on this record, we agree with the trial court that Appellant has failed to establish that the trial court erred or abused its discretion in accepting the Commonwealth's race-neutral explanations. While Appellant refers to the Commonwealth's acceptance of other similarly situated jurors, he did not present any evidence in the record to support this contention, nor does he identify or discuss any such evidence in his brief. Accordingly, Appellant has not demonstrated

_____

[11] To the extent that Appellant suggests the composition of the jury pool itself violated the principles of **Batson**, that argument would merit no relief. First, Appellant did not preserve a challenge to the composition of the jury pool. Second, Appellant has not produced any evidence that the procedures for selecting the pool were discriminatory.

purposeful discrimination in the Commonwealth's decision to strike Juror 34 or any error in the trial court's ruling. *See Edwards*, 177 A.3d at 971. Accordingly, no relief is due.

### 7. Sentencing

In his remaining claims, Appellant raises two arguments that his mandatory life sentence was unconstitutional, and he asserts that the trial court should have informed the jury that Appellant could receive a mandatory life sentence without parole if convicted. We address Appellant's two constitutional arguments together.

First, Appellant asserts that his sentence violates *Alleyne*. Appellant's argument refers to his **first-degree** murder sentence and, without proper citation to a statute, quotes a statutory provision concerning sentences for **third-degree murder** convictions for an individual previously convicted of murder or voluntary manslaughter. *See* Appellant's Brief at 40-41 (quoting 42 Pa.C.S. § 9715). Appellant then suggests that that Section 9715 requires a finding of fact concerning "element or ingredient of the charged offense" and that "a life sentence is a fact that must be determined beyond a reasonable doubt." *Id.* at 41.

Second, Appellant contends that a sentence of life without parole violates the federal and Pennsylvania constitutions' prohibitions against cruel and unusual punishment. *Id.* at 42. Appellant acknowledges precedent rejecting similar arguments, but he asserts that "times have changed" and cites two articles to claim an equivalency between a sentence of death and life

imprisonment. *Id.* at 42-43 (citing an article and book to state that over 200,000 people in the United States are "serving life or virtual life sentences"). In short, Appellant asserts that "[i]t is equally immoral as sentencing a person to the death penalty because that person [serving life in prison] will die in prison" and that "[d]eath by incarceration is a death sentence and should be reversed, alongside death by execution, for the worst offenders." *Id.* at 43.

To the extent Appellant challenges his sentence based on *Alleyne* or the constitutional prohibition on cruel and unusual punishment, those claims implicate the legality of his sentence. *See Commonwealth v. Lawrence*, 99 A.3d 116, 122, 124 (Pa. Super. 2014). Therefore, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

Instantly, we conclude Appellant's constitutional arguments are wholly misplaced. Appellant's *Alleyne* claim is premised on a sentencing statute that does not apply to the instant case. Further, our review confirms that the statutes concerning life without parole sentences in death penalty cases do not involve the finding of an additional fact that increases the sentence as Appellant contends is required pursuant to *Alleyne*.

Specifically, the relevant statutes[12] make clear that the trial court must impose a sentence of life imprisonment when the jury does not impose a death

---

[12] The relevant statutory provisions are as follows: (1) 18 Pa.C.S. § 1102(a)(1) provides that "a person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment in accordance with 42 Pa.C.S. § 9711 (relating to sentencing procedure for

*(Footnote Continued Next Page)*

sentence. *See* 18 Pa.C.S. 1102(a)(1); 42 Pa.C.S. § 9711(a). The fact of the conviction mandates the life sentence, and pursuant to 61 Pa.C.S. § 6137, Appellant must serve the sentence without the possibility of parole. *See* 61 Pa.C.S. § 6137(a)(1); *cf. Commonwealth v. Batts*, 66 A.3d 286, 296 (Pa. 2013) (discussing the interaction of former Section 1102(a) and 6137). Because these statutes authorize Appellant's life without parole sentence absent the need to find any facts beyond his conviction for first-degree murder, *Alleyne* does not apply.

As to his cruel and unusual punishment claim, Appellant's boilerplate reference to evolving standards simply does not carry his burden of demonstrating that his sentence is unconstitutional. *See Commonwealth v. Yasipour*, 957 A.2d 734, 741 (Pa. Super. 2008) (noting that this Court must presume the validity of "a punishment selected by a democratically elected

---

murder of the first degree)[;]" (2) 42 Pa.C.S. § 9711(a)(1) provides that "[a]fter a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment[;]" and (3) 61 Pa.C.S. § 6137 provides that "The board . . . may release on parole any inmate to whom the power to parole is granted to the board by this chapter, **except an inmate condemned to death or serving life imprisonment**." 18 Pa.C.S. § 1102(a)(1), 42 Pa.C.S. § 9711(a)(1); 61 Pa.C.S. § 6137(a)(1) (emphasis added). Our Supreme Court has stated that "that life has intrinsic value and should not be taken by the state without good cause, proven to our highest standard, whereas life imprisonment remains our default punishment for capital cases." *See Commonwealth v. Eichinger*, 915 A.2d 1122, 1138 (Pa. 2007). Therefore, it appears that Pennsylvania law recognizes that the death penalty is a more severe sentence than the "default" sentence of life without parole. *See id.*

legislature against the constitutional measure, we presume its validity" and that "[a] heavy burden rests on those who would attack the judgment of the representatives of the people"). Appellant fails to cite any case law to support his argument. Further, our review reveals no Pennsylvania case law at this juncture indicating that a life imprisonment without parole sentence is the equivalent of the death penalty for an adult offender based on changing societal standards. Consistent with the United States Supreme Court, our Supreme Court has determined that a mandatory sentence of life without parole for a juvenile offender violates the prohibition against cruel and unusual punishment, but that rule remains limited to juvenile offenders. *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1147 (Pa. Super. 2017) (rejecting an eighteen-year-old offender's cruel and unusual punishment claim that relied on *Miller v. Alabama*, 567 U.S. 460 (2012)). For these reasons, we conclude that Appellant's cruel and unusual punishment claim fails.

In his final issue, Appellant contends that the trial court erred in denying his request to instruct the guilt-phase jury "with regard to the penalty for [a] non-capital life sentence." Appellant's Brief at 44. Appellant, apparently referring to his *Alleyne* claim, contends that it is necessary to inform the jury of this fact.

It is well settled that

[w]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing

- 33 -

its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Rodriguez*, 174 A.3d at 1146 (citation omitted).

As discussed above, Appellant's *Alleyne* claim is misplaced, and his related argument that the guilt-phase jury required an instruction to find facts enhancing his sentence lacks any support. We add that Appellant cites no legal authority to support his claim that he is entitled to an instruction regarding punishments during the guilt phase of a capital trial. To the contrary, this Court rejected a similar claim in *Rodriguez*. *See id.* at 1146-47 (noting that the length of punishment is not a proper inquiry before a jury charged with determining guilt or innocence). Accordingly, the trial court properly denied Appellant's requested instruction, and Appellant's claim merits no relief. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2021